JAMES HABERSHAM, plaintiff in error, *vs*. THE STATE OF GEORGIA, defendant in error.

1. It is error to charge the jury that they are in no sense judges of the law.
2. On the trial of a prosecution for aiding to escape from custody, the fact of custody is for the jury, and so also is the legality of that particular custody. The court should acquaint the jury with the needful rules of law to enable them to distinguish legal from illegal custody, and let them make the application thereof to the facts in evidence.
3. It is error to charge that the custody was legal if the state's evidence is true, or that if the jury believe the evidence for the state they must find a verdict of guilty.
4. Custody by a private person after a legal arrest without warrant, becomes illegal if protracted for an unreasonable time, and whether the time was reasonable or unreasonable is a question for the jury, under proper instructions from the court as to the promptness which the law exacts in conveying the party arrested before a magistrate.
5. Cruel treatment of his prisoner by the captor may be considered (where there is evidence on the point) to illustrate the purpose of the arrest and the *bona fides* of the custody.
6. Custody voluntarily assumed by a private person without warrant, may be lawfully terminated with his consent, by turning the prisoner loose, especially if the latter be not guilty.
7. To make the violation of a lawful custody criminal, its legal character need not be positively known to the offender, if he has good reason to believe it, or is grossly negligent in the use of means to inform himself.
8. Actual guilt of the person held in custody for felony by a private person without warrant, is not indispensable to the legality of the custody, and

therefore neither his conviction nor his prosecution is a pre-requisite to convicting another for assisting him to escape. The question of his guilt is not otherwise involved than as throwing light upon the motive and lawfulness of his arrest, but for that purpose it is open to the consideration of the jury.

Criminal law. Escape. Arrest. Charge of Court. Warrant. Evidence. Before Judge TOMPKINS. Chatham Superior Court. May Term, 1875.

Hambersham was indicted for the offense of assisting a prisoner (name unknown to the jurors,) to escape from the custody of Lawrence Banks and Chatham Rodgers. The defendant pleaded not guilty. The evidence made, in substance, the following case :

On the night of June 13th, 1875, at about one o'clock, two clerks, Banks and Rodgers by name, arrested a boy in the house which connected with the store in which they were employed. They state that this boy, with some other person who ran off, broke into the house with the view of passing thence into the store ; that they only struck him for the purpose of overcoming his resistance when it was sought to arrest him ; that the boy had a sack over his head with holes for his eyes cut in it.

After his arrest he was tied, and according to the evidence of the defendant, whipped twice. Rodgers set up with him all night. In the morning Banks went to tell the proprietor of the store what had occurred. During his absence, according to the testimony of the state, at about eight o'clock, defendant untied the boy and took him away from Rodgers. Defendant said he would take upon himself the responsibility of releasing him. Rodgers said the boy had broken into the house. Defendant replied that he was a constable and knew the rules of law. Rodgers did not resist defendant as he was afraid of him. There had been a storm on the previous evening at about nine o'clock.

The boy, whose name was subsequently discovered to be Solomon Weaver, testified that he went through open doors into the house for the purpose of avoiding a storm ; that he

Habersham *vs*. The State of Georgia.

went into a closet and went to sleep; that he entered before the shop was closed; that when discovered he was shot at, arrested and whipped; that when defendant came in the morning, he gave him this account of the transaction; that Rodgers then told the defendant to turn him loose, which defendant did; that he immediately gave himself up knowing he had done nothing wrong.

Defendant stated that on the night of June 13th, he was up very late, and in passing the house which had been broken into he heard some one crying; that he peeped into the house and saw a boy tied; that he got up at twenty-five minutes after nine o'clock, A. M., and saw a crowd in front of the store; that he went down there and saw this boy who gave him his account of the trouble he was in, saying that Rodgers had whipped him for coming in and sheltering himself from the storm; that he turned him loose, telling Rodgers that he had no right to whip him; that he turned the boy loose by consent of Rodgers, who said he did not wish to have the boy dealt with by law, but would give him a few stripes.

The jury found the defendant guilty. A motion was made for a new trial upon the following grounds, to-wit:

1st. Because the court erred in charging the jury that they could find the defendant guilty notwithstanding the person claimed to have escaped had never been prosecuted.

2d. Because the court erred in charging that the jury were, in no sense, judges of the law, but must receive the law as given from the court, as law.

3d. Because the court erred in charging that they were not judges of the fact as to whether the custody of the escaped person was legal or not under the circumstances.

4th. Because the court erred in charging that the custody was legal if the evidence adduced for the state was true.

5th. Because the court erred in charging that it was the exclusive judge of the question as to whether the custody was legal or not in this case, under the circumstances and facts disclosed.

6th. Because the court refused to charge that if the jury

believed from the evidence that the holding of the boy was for an unreasonable time after his arrest, then the custody was not legal, and they must acquit.

7th. Because the court erred in charging that the jury could not consider the fact that the boy was being cruelly treated at the time he was released.

8th. Because the court erred in refusing to charge that if the jury believed that Rodgers, who had the boy in custody, told the defendant to turn him loose, then they could not find the defendant guilty.

9th. Because the court erred in refusing to charge that the jury could not find the defendant guilty unless they believed from the evidence that he knew the boy was held for a criminal offense.

10th. Because the court erred in charging the jury, that in making up their verdict they could not consider the question whether the boy had or had not been guilty of a criminal offense; but that if the boy was in custody of Rodgers, as the evidence for the state disclosed, although he may have been perfectly innocent of any burglary, still, if the jury believed the evidence for the state, they must find the defendant guilty.

The motion was overruled and the defendant excepted.

J. V. RYALS, by brief, for plaintiff in error.

A. R. LAMAR, solicitor general, by W. G. CHARLTON, for the state.

BLECKLEY, Judge.

1. Logically considered, the trial of a criminal case is an effort to complete a final syllogism, having, for one premise, matter of law; for the other, matter of fact; and for the conclusion, the resulting proposition of guilty or not guilty. It is the duty of the judge to supply the jury with material for the major premise of this syllogism; and it is the duty of the jury to collect from the evidence the minor premise, compare the two, draw the conclusion, and declare it in their verdict.

Inasmuch as it is possible for the judge to mistake the law or misrepresent it, the material which he supplies, or some part of it, may be erroneous. Are the jury, nevertheless, to accept it as correct, or is it subject to their revision and correction? May they, if they think it faulty, reject it, and substitute in its place something corresponding to their own convictions of what the law really is? Are the scriptures of the law an open bible; or must they be read for the laity by the priesthood of the bench? The power of overruling the judge's charge, apparently conceded to the jury by this court in most of the cases (see Hopkins' Annotated Penal Laws, section 1602,) prior to Brown's case, reported in 40 *Georgia Reports,* 689, is, in the latter, denied; and, by several later adjudications, the doctrine of Brown's case has become the established rule of decision: See 41 *Georgia Reports,* 217; 49 *Ibid.,* 485; 52 *Ibid.,* 82, 290, 607. It is, perhaps, too late for a single member of the court to urge his individual conviction that Brown's case was an innovation. The learned judge who delivered the opinion of the court in that and in some of the subsequent cases cited above, has declared that it was not an innovation, that it was opposed to previous *dicta* only, not to previous decisions. He thought the true principle of the former cases was preserved. Acquiescence in that view would, probably, at this late day, be the better line of judicial conduct for any of his successors who might be of a different opinion. The now current holding is, in effect, that, to the jury, the highest and best evidence of what the law is, is the charge of the court; indeed, that their only final access to the law is through this charge. And it is maintained that, in order to judge of the law, it is in nowise necessary that the jury should be invested with power to revise the charge and correct it. As the judge is the organ of the law itself, through whom is made known to the jury what the law is, they are to receive it as he lays it down, and not discredit him as a legal authority. In judging the law they are to pass upon what it is in the charge, not upon what it is out of the charge; and coming thus to an understanding of it, are to

determine what is its right and proper application to the facts in evidence, and what conclusion results from combining the two elements of law and fact. When the jury hear the charge, understand what it means, and apply it to the facts before them, they have judged of the law which the charge contains; and, as they have no proper access to any different law, there is, for them, no different law on the subject, and they cannot correct the errors of the judge if they would. Relatively to the jury, the charge stands like a volume of law published by authority—the only volume so published of which they know the contents. But none of the cases hold, or even hint, that the jury are in no sense judges of the law. If to judge the law and to follow the charge be incompatible, that is, if to accept the law as registered in the charge be a surrender of the right to judge of it, then the theory that the charge is binding must be abandoned, for the statute expressly declares that the jury shall be judges of· the law as well as the fact: Code, section 4646. If we must give up one or the other of the two things, it is in vain to hesitate; the right to judge must be preserved, and the duty of conforming to the charge be no longer exacted. We have seen, however, that the two branches of the rule are believed to be reconcilable, that·is, that the jury may be judges of the law without having the right to contradict the court or to reject what is delivered as law from the bench. No tribunal whatever is at liberty to refuse to recognize as law what comes to it duly vouched as such by the highest instrumentality appointed by the law to give it assurancce. If otherwise, a court, in judging of the law contained in the constitution of the United States, might deny the contents to be law, instead of merely finding out the true meaning of the instrument and applying that meaning to the case in hand.

2. In the foregoing presentation of the relative functions of judge and jury, the subject has been contemplated in its widest range, as embracing an entire case; but the like principle of separation between the province of the judge and that of the jury is to be observed in dealing with any given sub-

division of the case. Thus, an essential part of the offense before us is the custody alleged to have been violated. Was it a legal or an illegal custody? How are the two classes to be distinguished? By certain variations in the attendant circumstances. What circumstances will bring this particular custody within the class legal, and what will bring it within the class illegal, are questions of law; but the actual presence or absence of one set of circumstances or the other, in the particular instance, is matter of fact. Legal custody or illegal custody is, therefore, a conclusion consisting of law and fact blended; just as guilty or not guilty is a conclusion composed of the like elements. As both conclusions are of the same nature, the processes of arriving at them are similar. The law element is the material for the major premise in a special syllogism touching custody, and is to be supplied by the judge. The jury are to collect from the evidence the minor premise, compare the two, and draw the conclusion of legal custody or illegal custody. As the judge can decide no question of fact, he is not permitted to declare whether the particular custody disclosed by the evidence belongs to the one class or to the other. He, as the organ of law, can carry his voice no farther than the law goes. He can say, as the law does, that such and such custody is legal, and such and such illegal; but he cannot say that this particular custody was such or such, for that depends, not on the law, but on the evidence. Of course, too, the bare fact of whether there was any custody at all, is, also, for the jury, unless it is admitted.

3–8. The remaining points are distinctly ruled in the headnotes, and will be fully understood when read in the light of the reporter's statement.

Judgment reversed.