### 3177.  PIEDMONT HOTEL COMPANY v. HENDERSON.

1. Where two or more separate and distinct causes of action are sued on in the same petition, and the plaintiff dismisses from the case certain of the causes of action, he has the right to sue over on the causes of action so dismissed; and, if the new suit be brought within six months from the time of the dismissal, the fact that these causes of action were sued on in the former action may be shown, under the Civil Code (1910), § 4381, to avoid the bar of the statute of limitations.

(a) Amendments ordinarily relate back to the beginning of the suit. This rule, however, is not to be so applied as to affect the right to sue over, within six months, upon causes of action which by amendment were stricken from a case, and which would be barred by the statute of limitations but for the pendency of the suit from which they were so stricken.

2. Ordinarily, where a right or privilege is asserted under court proceedings, it is proper that a copy of the proceedings be set forth in the pleadings or copied as an exhibit, especially if there be special demurrer requiring it. However, the overruling of a special demurrer complaining that a court writing is set forth according to its alleged legal effect, and not by literal copy, will not be considered as harmful error, where the status of the case would be the same whether the writing had the legal effect claimed or not.

3. Whoever arrests or imprisons a person without a warrant is guilty of a tort, unless he can justify under some of the exceptions in which arrest and imprisonment without a warrant are permitted by law; and the burden of proving the existence of the facts raising the exception is upon the person making the arrest or inflicting the imprisonment. If authority for the arrest is shown, the presumption is that it was made legally and for a lawful purpose, and the burden of proof is upon the person asserting the contrary.

4. The words, "in his presence," as used in the Penal Code (1910), § 917, and the words, "within his immediate knowledge," as used in § 921 (both sections relating to arrest without warrant), are synonymous.

5. The provision in the charter of Atlanta (Acts 1905, p. 613) that policemen of that city may arrest for State offenses, with or without warrant, must be construed in connection with the general law on the subject so as to authorize a policeman of that city to arrest without warrant only when one of the exceptional cases set forth in the general law exists.

6. Whenever an arrest without warrant is made, the officer or person making the arrest must without delay convey the offender before the most convenient magistrate and obtain a warrant. A reasonable time (ordinarily to be determined by the jury) is allowed for the obtaining of the warrant. Imprisonment or detention beyond the reasonable time not only renders the imprisonment or detention illegal, but makes the entire transaction (including the arrest) a trespass ab initio.

(a) The rule that "when entry, authority, or license is given to any one by law, and he doth abuse it, he shall be a trespasser ab initio," cited and applied.

7. The court did not err in instructing the jury on the subject of punitive damages.

8. "Cruel treatment of his prisoner by the captor may be considered (where there is evidence on the point), to illustrate the purpose of the arrest and the bona fides of the custody." The rule is applicable where the mother of three young daughters was arrested at night, without warrant, and the person making the arrest refused her request that she be allowed to go to her home, conveniently near by, for the purpose of securing the safety of her daughters, who were without male protection, and imprisoned her for the night without giving her opportunity to communicate with her children.

9. While, in a sense, hearsay is admissible to prove death, yet before the hearsay is admissible for that purpose, it must come up to the requirements of·the Civil Code (1910), § 5764, which provides, "Pedigree, including descent, relationship, birth, marriage, and death, may be proved either by the declarations of deceased persons related by blood or marriage, or by general repute in the family, or by genealogies, inscriptions, 'family trees,' and similar evidence."

10. The verdict on the second count is reasonable in amount, is well supported by the evidence, and no error affecting it was committed on the trial. The verdict on the first count (in the light of all the facts in the record and the finding of the jury in favor of the defendant on the third count) is very large, if not legally excessive; and in the course of his charge the judge gave to the jury a material misdirection as to the character of the damages claimed in that count. The plaintiff is given the option of curing the error by writing off the recovery on the first count; in which event the judgment will stand affirmed; otherwise a new trial results as to the entire case.

DECIDED SEPTEMBER 11, 1911.

Action for damages; from city court of Atlanta—Judge Reid. December 14, 1910.

The plaintiff was employed as a chambermaid in the Piedmont Hotel in Atlanta. About ten o'clock on the night of September 16, 1905, she was suspected of having stolen a purse and a dollar bill from one of the rooms. The manager and the assistant manager of the hotel and a special policeman (nominally employed by the city, but in fact employed and paid by the hotel company) confronted her with the alleged theft, and the policeman, at the instruction of the other two gentlemen, arrested her. The manager consulted with the president of the hotel company, and he directed that she be "locked up." She was carried to the police station and imprisoned there until the next afternoon at 2.30 o'clock, when she was brought before the recorder and bound over to the State court for larceny. Up to this time no warrant had been sworn out, but, upon her being bound over to the State court, a warrant

was sworn out by the special policeman and an accusation thereon was preferred against her in the city court. She was tried and acquitted. On May 27, 1909, the present suit was filed against the hotel company for damages. The petition contains three counts. The first alleges the arrest of the plaintiff without a warrant, and prays for damages, both actual and punitive, for illegal arrest. The second count takes up the transaction following her illegal arrest, alleges her incarceration in the police station without warrant or other lawful authority, and prays for damages, actual and punitive, on account of false imprisonment. The third count sets forth the swearing out of the warrant and the prosecution in the city court, and prays for damages on account of malicious prosecution. Under the petition as drawn, the several counts were employed not for the purpose of setting forth the same cause of action with a variety of detail, as is frequently done, but for the purpose of dividing the general transaction involved in the arrest, imprisonment, and subsequent prosecution into three separate causes of action. The judge instructed the jury to render a separate verdict on each count. They found in favor of the plaintiff $2,500 damages on the first count (for illegal arrest), and $2,500 on the second count (for false imprisonment), and found in favor of the defendant on the third count (for malicious prosecution). Further facts necessary to an understanding of the points decided will be stated in the course of the opinion.

*Smith, Hastings & Ransom,* for plaintiff in error.

*Eb. T. Williams, Westmoreland Brothers,* contra.

POWELL, J. (After stating the foregoing facts.)

1. The first point, and perhaps the most troublesome point in the record, arises upon the defense under the statute of limitations. The present suit was not filed within the statutory period, but the plaintiff relies on section 4381 of the Civil Code (1910), which is as follows: "If a plaintiff shall be nonsuited, or shall discontinue or dismiss his case, and shall recommence within six months, such renewed case shall stand upon the same footing, as to limitation, with the original case; but this privilege of dismissal and renewal shall be exercised only once under this clause." It is made to appear by the pleadings and the proof that on January 26, 1906, the plaintiff filed, in the superior court of Fulton county, an action against the present defendant (joining also the manager

and the assistant manager of the hotel company, though they were afterwards stricken by amendment). That suit set forth in one count the entire transaction set forth in the three counts of the present suit, and the defendant filed thereto a demurrer, on the ground that "the same contains in the same count two separate and distinct causes of action, to wit, a cause of action for false arrest and a cause of action for malicious prosecution." The judge of the superior court sustained this demurrer, but gave leave to amend; and on January 28, 1909, the plaintiff filed an amendment to that petition, "striking therefrom any claim for damages on 'a cause of action for false arrest,' and electing to pursue the cause of action for malicious prosecution." The case was then assigned for trial, and on March 30, 1909, terminated in a nonsuit. The present suit, it may be recalled, was filed on May 27, 1909, i. e., within six months from the date on which the former suit was nonsuited, and also within six months from the date on which the plaintiff struck out from the former petition the claim for damages on account of false arrest and imprisonment.

Whether the petition in the former suit did, in its one count, set forth more than one distinct cause of action is not now a question for determination. The demurrer raising that point and the judgment of the court (unexcepted to) sustaining it make conclusive upon the parties, and upon the court in the trial of the present case, the proposition that the false arrest (including the false imprisonment—for it is manifest from the context that the expression, "false arrest," as used in the quotations from the pleadings in the former case, referred to the imprisonment as well as to the arrest) was a separate and distinct cause of action from the alleged malicious prosecution which followed thereon. The fact that we doubt the soundness of that ruling makes no difference; it is now a postulate of the case.

Before deciding the point which controls this branch of the case, we will eliminate another proposition. It may be that the language employed in the amendment to the former suit, by which the plaintiff struck from the petition "any claim for damages" on the cause of action for false arrest, left the allegations as to the false arrest and false imprisonment still in the petition as a part of the transaction declared on as a malicious prosecution. Be that as it may, we will decide the case as if the former petition in its

one count set up the three separate and distinct causes of action contained in the different counts of the present petition, and as if on January 28, 1909, the plaintiff struck out two of these causes of action, and was on March 30, 1909, nonsuited as to the third.

The point, the very serious point, which counsel for the plaintiff in error (the defendant in the lower court) makes. is that an amendment relates back to the date of the filing of the suit, and that when, on January 28, 1909, the plaintiff amended the petition in the former suit by striking out all causes of action except the one on account of the malicious prosecution, that amendment related back to the beginning of the suit and left the case as if the petition had been originally brought only for the malicious prosecution; so that when the case thus proceeding terminated in nonsuit, only a case for malicious prosecution could be renewed within six months thereafter.

We believe the true rule to be that if a petition contains two or more separate and distinct causes of action, each cause of action is to be tried and treated as if it were a separate and distinct case. In many instances the rules of pleading do allow separate and distinct causes of action to be joined in the same petition, though, as a matter of technical form and of orderliness of procedure, there is a requirement that each shall be set forth in a separate count. Each count, then, from a substantial point of view, is a separate suit; and the case made by the petition as a whole is determined as if separate suits had been filed and had been consolidated for the purposes of trial. For an analogue in criminal procedure, see *Tooke* v. *State,* 4 *Ga. App.* 495, 504 (61 S. E. 917). The requirement that the different causes of action shall be alleged in separate counts is technical only, and if the case proceeds to trial with the petition asserting two or more distinct causes of action in the same count, the case nevertheless stands as if a number of separate suits were on trial by consolidation. It seems expedient, logical, and altogether just to say that if a plaintiff should file a petition setting forth in separate counts a number of distinct causes of action, and afterwards should find that he was unable satisfactorily to proceed as to one of his counts, and should then strike or dismiss that count, the effect would be the same as if he had brought a like number of separate suits and had dismissed one of them; and that if the time required by the statute of

limitations had been completed after the filing of the suit and before the dismissal of the count, the plaintiff should nevertheless be allowed to sue over upon the cause of action asserted in that count within six months from the time he struck it out or dismissed it. ·This is merely to give to the code section on the subject of renewal of actions that liberal, common-sense construction which the courts are accustomed to say should be given it. See *Cox v. Strickland,* 120 *Ga.* 104 (47 S. E. 912) (especially at bottom of page 111 and top of page 112), and authorities there cited. If by technical delinquency the plaintiff has joined two distinct causes of action in the same count, he should be allowed to strike out or dismiss one of them on like terms; for one of the very objects of the renewal statute is to give the plaintiff the right to sue over without the embarrassment of the bar of the statute of limitations, where in the first suit he attempted to assert a cause of action, but "by some accident, or inadvertence or variance, not affecting the real merits of the case, was compelled to dismiss." *Moss v. Keesler,* 60 *Ga.* 44, 47. That the right to claim the benefit of the statute may apply as to a part of a case only (if that part relates to a distinct and entire cause of action) is shown by the Civil Code (1910), § 4382, where it is given to a·defendant whose plea of set-off has been disposed of without a hearing on the merits.

In our opinion, the rule insisted upon by able counsel for the plaintiff in error, that amendments relate back to the beginning of the suit, does not destroy this right of renewal in cases such as those we have been discussing. The prime object of the rule is the saving of causes of action, not the destroying of them. It is a general rule, but it has its exceptions. When an amendment merely perfects, either in form or in substance, the manner in which a particular cause of action has been stated, it relates back to the beginning of the suit, so far as that cause of action is concerned, and makes the procedural perfection finally attained as to that cause of action a perfection ab initio; but there are cases into which new and distinct causes of action are inserted by amendment (though the contrary is the general rule, of course), and in such cases the amendment does not relate back, and the causes of action contained in the petition prior to the introduction of the new cause of action are in nowise affected. Cf. *Bentley v. Crummey,* 119 *Ga.* 911 (47 S. E. 209).

The amendment involved in this case was twofold in its consequences. As to the allegations respecting the cause of action for malicious prosecution, it fulfilled the proper offices of an amendment, i. e., it relieved the statement of that cause of action of the procedural imperfection of being joined in the same count with the statement of another cause of action; and as to that cause of action it related back to the beginning of the case and made the perfection attained as to it a perfection ab initio. But as to the cause of action for the false arrest it operated quite differently; as to the statement of that cause of action it was no amendment at all, but was a dismissal; and dismissals do not relate back to the beginning of the suit, at least so far as counting time under the code section as to renewals of actions is concerned.

We are of the opinion that the trial court properly held that the plaintiff's causes of action, so far as the questioned counts are concerned, were not barred. In holding this we think that we are applying the rule on the subject according to its reason as so ably set forth by Mr. Justice Lamar in the case of *Cox* v. *Strickland,* 120 *Ga.* 104, 109 (47 S. E. 912); "Statutes of limitation are based partly on the theory that non-action by a plaintiff tends to throw his adversary off guard, making him careless in the preservation of receipts, vouchers, documents, and other evidence needful for his defense. But when a suit is pending, whether it be brought with technical correctness or not, the defendant is warned to preserve his evidence. The attempted assertion by judicial proceedings of a cause of action in which A gives B notice of his claim is sufficient to stop the running of the statute during the pendency of that suit, and for six months thereafter. In like manner, if B in the same suit, by a set-off or cross-bill (Civil Code, § 3787 [Civil Code (1910), § 5282]; *Crane* v. *Berry,* 60 *Ga.* 362; Hunt *v.* Spaulding, 18 Pick. 521), or other appropriate proceeding, should attempt to enforce his cause of action against the plaintiff or other party to the proceedings, the statute would likewise be tolled as to this claim. Notice had been given. The opposite party was warned. If the suit was disposed of on any matter not concluding the merits of the cause of action, or *any* [italics ours] of the causes of action, asserted in the proceeding by one party against another, it might be thereafter seasonably renewed in the proper forum, in proper form, against any of the proper and all of

the necessary parties therein." See also *Atlanta, K. & N. Ry. Co.*
v. *Wilson,* 119 *Ga.* 781 (47 S. E. 366).

2. Another exception involving somewhat of the general ques-
tion we have just been discussing will now be noticed. The plaintiff,
in alleging the proceedings had in the former suit, for the purpose
of showing that the present action was not barred, did not set
forth verbatim a copy of the amendment of January 28, 1909, by
which the cause of action as to the arrest and imprisonment was
stricken out, but stated the substance of it in the following
language: "The plaintiff filed an amendment striking from said
suit any claim for damages on a cause of action for false arrest."
The defendant filed special demurrer to this, on the ground that
a copy of the amendment was not attached; and exception is
taken to the overruling of the special demurrer. Counsel for the
plaintiff in error cite *Atlanta, K. & N. Ry. Co.* v. *Wilson,* supra,
in which it is held that, "if the point be raised by special demurrer,
the plaintiff, who relies on the privilege of renewal under the
Civil Code, § 3786 [Civil Code (1910), § 4381], to escape the bar
of the statute, may be required to attach a copy of the petition in
the first suit, so that the court may determine, as matter of law,
whether it was for the same cause of action as the second, between
the same parties, brought before the original bar had attached, and
in a court having jurisdiction of the subject-matter." The petition
in the former action was set forth by exhibit in the case at bar, and
the allegation attacked by the demurrer merely stated what be-
came of that case so far as the particular cause of action is con-
cerned. We doubt that the reason underlying the rule as announced
in the case just cited applies with full vigor here. At any rate,
the allegation, under the facts of the present case, stood in such an
immaterial relation that any error in respect to its sufficiency was
harmless; for whether the pleader correctly stated the substance
and legal effect of his amendment or incorrectly stated it, the case
was unaffected. That is to say, if the amendment alleged by the
pleader was not adequate to dismiss the cause of action as to
false arrest from the case, then it remained in, and fell by nonsuit
in March, 1909, and was on that account renewable; if the amend-
ment was adequate to effect the dismissal, the case was neverthe-
less renewable, for six months had not expired from the date of
the amendment.

3. The jury, as has been said, found in favor of the defendant as to the third count (for malicious prosecution) ; hence, only errors relating to the manner in which the other two counts were submitted to the jury will be considered. There is no dispute that the arrest and imprisonment complained of in the other two counts took place without any warrant being procured. Whoever arrests or imprisons a person without a warrant is guilty of a tort, unless he can justify under one of the exceptions prescribed by law; and the burden of proving that the case lies within the exception rests upon the person making the arrest or inflicting the imprisonment *White* v. *State,* 99 *Ga.* 16 (3), 19 (26 S. E. 742). If a warrant is shown authorizing the arrest, the presumption is that the arrest was made legally and for a lawful purpose, and the burden of proof is upon the person asserting the contrary. *Graham* v. *Marks,* 98 *Ga.* 67, 70 (25 S. E. 931).

4. The circumstances under which an arrest without warrant may be made by an officer are set forth in section 917 of the Penal Code of 1910 (which section is a codification of the common law, with slight enlargement), as follows: "An arrest may be made for a crime by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." This applies to arrests for misdemeanors as well as for felonies; though as to arrests for felonies somewhat greater latitude may be allowed in certain cases. *Porter* v. *State,* 124 *Ga.* 297, 302 (52 S. E. 383) ; *Thompson* v. *State,* 4 *Ga. App.* 649 (2), 652 (62 S. E. 568). In this case the crime charged was a misdemeanor. There is no contention that the alleged offender was endeavoring to escape, or that for any other cause there was likely to be a failure of justice for want of an officer to issue a warrant. The only ground of justification left was that the crime was committed in the officer's presence. Complaint is made in regard to the court's instructions to the jury as to when a crime may be considered as having been committed in an officer's presence. There are other assignments of error bearing on the same general subject. (Were it not for the contingency that there may be another trial of the case, it would be unnecessary for us to pass upon these questions, in view of what we are going to rule a little later on in the course of the opinion.)

We think that the words, "in his presence," as used in the Penal Code (1910), § 917, and the words "within his immediate knowledge," as used in § 921, are synonymous. To justify the arrest without warrant, the officer need not see the act which constitutes the crime take place, if by any of his senses he has personal knowledge of its commission. Thus, if he hears shooting or other noises, and runs immediately to the place and finds the offender with evidence of the alleged crime on him, or finds the offender running away as if in apparent flight from the crime, and in similar cases, the crime is considered as having been committed in the officer's presence or immediate knowledge. See the dissent in *Porter* v. *State,* supra, and cases therein cited.

5. It is said, however, that policemen in Atlanta have broader powers than ordinary officers as to making arrests, because it is provided in the charter of Atlanta (Acts 1905, p. 613), as to the police officers of the city, that "it shall be their duty to make arrests of any persons violating the ordinances of said city, with or without summons, and also with or without warrant; they shall likewise make arrests of any persons who have violated the statutes of said State, and their arrests for such violations are hereby authorized, either with or without warrants therefor." The general law as embodied in the Penal Code (1910), § 917, applies to policemen of all the municipalities of the State. *Thomas* v. *State,* 91 *Ga.* 204, 206 (18 S. E. 305) ; *Brooks* v. *State,* 114 *Ga.* 6 (39 S. E. 877) ; *Porter* v. *State,* supra ; *Johnson* v. *State,* 30 *Ga.* 426. Unless the local law as found in the Atlanta charter is construed in such a way as to make it harmonious with the general law, the local law would fall as being unconstitutional. A construction which avoids repugnancy to the constitution is always to be favored. With this in view, we construe the provision in the Atlanta charter as authorizing policemen of that city to make arrests without warrant only where such a course is permissible under the general law. The language of the local law is easily susceptible of this construction, and the ordinary canons of interpretation require the limitation here imposed upon it.

6. Even if we should find that the court erred in any of the instructions as to the legality of the arrest, there is a reason why the error should be considered as harmless and insufficient to authorize a new trial. The Penal Code (1910), § 922, provides:

"In every case of an arrest without warrant, the person arresting shall, without delay, convey the offender before the most convenient officer authorized to receive an affidavit and issue a warrant. And no such imprisonment shall be legal beyond a reasonable time allowed for this purpose." Though it would probably do no violence to the prerogative of the jury as to passing on the facts for us to say that the evidence in this case demanded a finding that the defendants did not comply with this law, still it is unnecessary for us to do so. What is a reasonable time for the detention after the arrest in order to procure a warrant is, generally speaking, a question for the jury; and in this case the question was fairly submitted to the jury, and by their verdict on the second count they have established the fact that the plaintiff was imprisoned for an unreasonable time before the warrant was procured. This being so, another proposition of law comes into play. One of the resolutions in the case of The Six Carpenters, 8 Coke, 146 (1 Smith's Leading Cases, 9th ed. 261), cited approvingly in *Sheftall* v. *Zipperer*, 133 *Ga.* 488, 492 (66 S. E. 253), is that "when entry, authority, or license is given to any one by the law, and he doth abuse it, he shall be a trespasser ab initio." This has been frequently applied to cases of arrest prima facie legal, followed by illegal detention. In the case of Brock v. Stimson, 108 Mass. 520 (11 Am. Rep. 390), the policeman legally arrested the plaintiff without a warrant, but failed in the duty of carrying him before the magistrate. The court, in an opinion by Mr. Justice Gray, held: "Every man has the right to the enjoyment of his liberty and the use of his property, except so far as restrained by law; and whoever unlawfully interferes with the enjoyment of the one, or the use of the other, is a trespasser. A man who seizes the property or arrests the person of another by legal process, or other equivalent authority conferred upon him by law, can only justify himself by a strict compliance with the requirements of such process or authority. If he fails to execute or return the process as thereby required, he may not, perhaps, in the strictest sense be said to become a trespasser ab initio; but he is often called such; for his whole justification fails, and he stands as if he had never had any authority to take the property, and therefore appears to have been a trespasser from the beginning. 2 Rol. Ab. 563; Sherland v. Govett, 5 B. & C. 485; s. c., 8 D. & R. 257; Smith v. Gatés

21 Pick. 55; Coffin *v.* Vincent, 12 Cush. 98; Russell *v.* Hanscomb, 15 Gray, 166; Munroe *v.* Merrill, 6 Id. 236; Williams *v.* Babbitt, 14 Id. 141. The same rule holds good in the case of an officer who, after arresting a person on criminal process, omits to perform the duty required by the law, of taking him before a court. Tubbs *v.* Tukey, 3 Cush. 438." See also Boston & Maine R. *v.* Small, 85 Me. 462 (35 Am. St. R. 379); Dehn *v.* Hinman, 56 Conn. 320 (1 L. R. A. 374). Hence, it is immaterial to inquire whether the officer could have arrested without a warrant if he had thereafter obeyed the provisions of the Penal Code (1910), § 922; for his legally ascertained disobedience of this law relates back so as to make the arrest in any event illegal.

7. The point is made that the court erred in submitting to the jury instructions on the subject of punitive damages. Without going into the details of the evidence, we will dispose of the exception with the statement that this issue was presented by the evidence as well as by the pleadings and was properly submitted to the jury.

8. Complaint is made that the court allowed the plaintiff to prove that at the time of her arrest at night and her imprisonment, she had at home three young daughters without male protection. Taken in connection with the testimony that the defendants' agents were informed of this fact and were requested by the plaintiff to take her by her home for the purpose of making some provision for the safety of these children, and that the request was refused (though her home was near by), the evidence was plainly admissible, not only for the purpose of showing the extent of the plaintiff's mental suffering, but also for the purpose of showing malice and wanton oppression on the part of the defendant. "Cruel treatment of his prisoner by the captor may be considered (where there is evidence on the point) to illustrate the purpose of the arrest and the bona fides of the custody." *Habersham* v. *State*, 56 *Ga.* 61 (5).

9. The defendant desired to prove the death of two persons connected with the case—a Miss Scott and the policeman, Carson. A witness was asked, "Have you heard from any member or members of Miss Scott's family whether or not she is dead?" The witness answered, "I had a letter from her sister." The court ruled this out. As the record does not disclose what was in the

letter or what the defendant expected to show by the letter, it is not necessary to consider this exception further. As to Carson, the witness testified, "W. W. Carson was a member of the police force, and there was public announcement of his death, and my officer at the hotel told me of his death, and told me he attended his funeral, but I have no personal knowledge of it." The court ruled this out.

The Civil Code (1910), § 5764, provides: "Pedigree, including descent, relationship, birth, marriage, and death, may be proved either by the declarations of deceased persons related by blood or marriage, or by general repute in the family, or by genealogies, inscriptions, 'family trees,' and similar evidence." In *Imboden* v. *Etowah Co.,* 70 *Ga.* 86, it was held in general language that hearsay as to death is admissible. In *Williams* v. *State,* 86 *Ga.* 548, 550 (12 S. E. 743), the generality of this statement was criticised. While, in a sense, hearsay is admissible to prove death, yet the hearsay must come up to the requirements of the code section quoted above. Cf. *Augusta R. Co.* v. *Randall,* 85 *Ga.* 297 (3) (11 S. E. 706). See also *Travelers Ins. Co.* v. *Sheppard,* 85 *Ga.* 751 (10) (12 S. E. 18). The evidence was properly excluded.

10. We come now to the only error we find in the entire record. The first count sets up that by the false arrest the plaintiff was greatly humiliated and damaged in her feelings and reputation, and mentions no other element of damage (except punitive damages). The second count sets up that by the false imprisonment which ensued after the arrest and by the circumstances connected with it, she was "greatly humiliated and made sick, and nearly lost her reason, and her nervous system was so shocked that for over two weeks she was prostrated from the effects thereof, from which she has never recovered." We need not recite what is set up in the third count, as the verdict was for the defendant as to that. The judge, in his charge to the jury, in stating the contentions of the parties, took up the counts of the plaintiff's petition and read them to the jury separately. Then, after stating the substance of the pleas in the case, he stated to the jury what facts were conceded by both parties to be true as to each of the counts. He then stated the contested issues arising under each count, and gave to the jury the rules of law by which these contested issues were to be settled. As he concluded his instructions as to the contests

under each count, he added, "I will instruct you as to the amount of the recovery later, on this proposition, if she is entitled to recover at all." After he had finished with the other portions of his charge and approached the question of damages, he made the following statement to the jury: "Now, she sets up, gentlemen, she suffered damage on each of these counts to which I have called your attention, for humiliation and for her wounded feelings, for her suffering mental and physical, for her disgrace amongst her friends and people who knew her, and humiliation, and that it affected her nervous system so that she suffered a nervous shock for two weeks or more, and asks to recover damages, laying her damages on each one of the counts at $10,000. Well, gentlemen, the same rule or measure of damage would apply on each of these counts, and it is left to the enlightened consciences of impartial jurors to say what the amount of damages would be, if she recovers in the case. It would be your duty to look into the character of the wrong done her, if she was wronged, in each count; what effect it had as to causing her humiliation; what its tendency was as to disgracing her before the public, amongst her friends; and, desiring to be fair and just to both sides and not oppressive to the defendant, you would give to her such sum as you believe would compensate her, under the circumstances, for her pain and her suffering, her humiliation, her mental suffering, if she underwent such suffering, and such sum as your enlightened consciences would approve as right and just under the facts and circumstances of the case." Then, after instructions on the subject of punitive damages, he charged the jury as to the form of their verdict, directing them to make a separate finding as to each count. The verdict was: "We, the jury, find for the plaintiff twenty-five hundred dollars on count No. 1, and twenty-five hundred dollars on count No. 2, making a total of five thousand dollars."

The error complained of is that the court instructed the jury, in effect, that under the first count, as well as under the second, they might award damages to the plaintiff for the physical suffering (including the shock to her nervous system) which she experienced through her illness which she claimed was brought about by the false imprisonment, though no such damages were claimed or alleged in the first count. The point seems to be well taken. While

it is true that the court correctly read the plaintiff's petition and the various counts thereof to the jury, still, as he was repeatedly reminding them throughout the charge that he would inform them later as to how they should assess the damages in the event they found the defendant liable, and did at the close of the charge give these erroneous instructions, we can not say that the jury was not misled. There is a possibility that the jurors decided that the plaintiff ought to have $5,000 for the wrong done her by the false arrest and imprisonment, considered as one continuous and connected transaction, and that, having agreed on this amount, they proceeded to divide. it into two parts, in order to comply with the directions of the judge as to the form of their verdict; but as judges we have no right to assume that they did any such thing; for, under the law and under the charge of the court, it was their duty to consider and to find as to each count separately. If the plaintiff had not divided the transaction into parts and made each part a separate cause of action, there would be no trouble in sustaining the verdict, but the fact that confronts us is that the division exists. Under all the facts of the case the false imprisonment was a much more serious cause of damage than the false arrest. The point is made that $2,500 for the false arrest alone is excessive. It will not be necessary for us to make an authoritative ruling on that point. However, in the light of the decision in the case of *Fire Association* v. *Fleming,* 78 *Ga.* 733 (3 S. E. 420), in which Mr. Justice Hall denounced the verdict of $1,000 for an arrest without warrant as so excessive as to show bias or misapprehension on the part of the jury, there is much plausibility in the point. It must be kept in mind that the verdict of the jury on the third count is in effect a finding that probable cause existed for a prosecution of the plaintiff, though it was afterwards ascertained that she was not guilty. If there was probable cause for a prosecution, there was reasonable ground for an arrest. The verdict, taken as a whole, must be construed as finding that the actionable wrong which the defendant committed, so far as the first count is concerned, was not in causing her to be arrested, but in not getting a warrant. The arrest was in private, and, standing alone, was not accompanied by specially aggravating circumstances. If the jury believed the plaintiff's version of the case, the damages assessed are very moderate so far as the second count is concerned;

but this is not true as to the first count. As to the second count, the case was fairly and legally tried throughout; as to the first count there is an error of serious import. We make this statement in explanation of the direction we are about to give the case. We are of the opinion that the proper disposition of the case, under all the circumstances, is to affirm the judgment, on condition that the plaintiff will voluntarily write off the recovery had on the first count, thus relieving the case of all effects of the error, but that otherwise a new trial be had of the case as a whole.

*Judgment affirmed, on condition.*

RUSSELL, J., concurring specially.

In concurring in the judgment of the court in this case, and as to the point passed on in the tenth division of the opinion, I do not wish to be understood, even in the light of Judge Hall's decision in *Fire Association* v. *Fleming*, 78 *Ga.* 733 (3 S. E. 420), as agreeing to the proposition that the verdict upon the first count was excessive. I conceive it to be the right of the jury to fix an amount even as large as that of the verdict upon that count, for the damages resultant upon an unlawful arrest, if the attendant circumstances in a particular case authorize such an exercise of their discretion. But in view of the fact that the ruling of the trial court in the previous litigation was not excepted to, and thereby became the law of this case, this court, as well as the lower court, is bound to the proposition that the transaction dealt with in the plaintiff's petition can not be considered as one continuing cause of action, but must be treated as three causes of action entirely separate and distinct.

HILL, C. J., dissenting.

I concur in all of the views so clearly and forcibly expressed by Judge Powell in his opinion for the majority of the court, except as to that portion embraced in the tenth division of the opinion and the tenth headnote. After a most careful consideration of the evidence and the charge of the learned trial judge, referred to and discussed by Judge Powell, I do not think that the charge relating to the damages on the first count contained a material error which in any manner misled or confused the jury; nor do I think that this court can say, under the facts, that the amount of the verdict found on this count was excessive; and I therefore can not concur in the conclusion of the majority of the court that the verdict rendered

on this first count in behalf of the plaintiff should be written off under penalty of another trial.

The petition contained three counts. The first count claimed damages for the illegal arrest. The second count claimed damages resulting from false imprisonment following this illegal arrest; and the third count claimed damages for the malicious prosecution following the illegal arrest and false imprisonment; all three of the counts laying the amount of the damages at the arbitrary sum of $10,000. The damages resulting to the plaintiff from each one of the wrongful acts complained of, to wit, the illegal arrest, the false imprisonment, and the malicious prosecution, seem to me to be substantially the same, although there may have been some greater elaboration of these grounds in the second and third counts than in the first count. But after all, considered from a reasonable and practical viewpoint, it seems to me that the character and extent of the damages claimed for each one of the three wrongful acts complained of do not substantially vary; and it is altogether reasonable to conclude that the jury, in considering the question of damages, did not make any very critical analysis of each character of the damages flowing from each separate wrongful act, or make concrete application to each count, but in all probability considered all the wrongs complained of, as one continuing tort, and endeavored by the verdict to compensate the plaintiff for all the wrongs for which they found the defendant was responsible.

It is insisted that the former ruling of the superior court, acquiesced in by both parties, that the proper legal procedure was to separate the items of damages into counts, was binding upon the court and the jury, and that the jury were therefore compelled to consider each question separately, and to award damages appropriate to each separate count, and not give a lump sum for all the acts complained of. This may be the sound legal view, but I have no idea that the jury, in fixing the amount of damages, were very greatly influenced by this technical view of legal pleading.

It is said by Judge Powell that the judge committed an error which may have misled the jury, in that he instructed them, on the first count, that they might consider certain elements of damages not claimed as grounds of damages in that count, but which were contained in the second and third counts, and that this instruction may have led the jury to give too large a verdict on the first count

for the unlawful arrest.   The judge charged as follows on the question of damages: "Now, she sets up, gentlemen, she suffered damages on each of these counts to which I have called your attention, for humiliation and for her wounded feelings, for her suffering mental and physical, for her disgrace amongst her friends and people who knew her, and humiliation, and that it affected her nervous system so that she suffered a nervous shock for two weeks or more, and asks to recover damages, laying her damages on each one of the counts at $10,000.   Well, gentlemen, the same rule or measure of damage would apply on each one of these counts, and it is left to the enlightened consciences of impartial jurors to say what the amount of damages would be, if she recovers in the case.   It would be your duty to look into the character of the wrong done her, if she was wronged, in each count; what effect it had as to causing her suffering; what effect it had as to causing her humiliation; what its tendency was as to disgracing her before the public, amongst her friends; and, desiring to be fair," etc.   I think the learned trial judge, in thus summing up all the grounds of damages which the jury were authorized to consider, was really making a summary of all the damages claimed in the three counts, and did not intend to make a distinct and separate statement of the grounds of damages set out in each of the separate counts.   It would probably have been more accurate for him to have separated the items of damages claimed on each count, but I can not bring my mind to believe that because he summed up all the damages, he thereby confused the issues submitted to the jury or misled them into giving too large an amount on the first count.   Of course, the statement made by the learned judge that the measure of damages on each count was the same was correct, the measure being the enlightened conscience of impartial jurors.   It must be conceded that the plaintiff was entitled to some damages, under the verdict on the first count, for the illegal arrest.   This first count sets up that by the illegal arrest the plaintiff was "greatly humiliated and damaged in her feelings and reputation," but mentions no other element of damages, except punitive damages.   In considering the evidence applicable to this count and the resulting damage from the wrong complained of, the allegations permit a very broad scope to the jury.   How much was she entitled to for the illegal arrest?   She says it greatly humiliated her, and damaged her in her feelings and repu-

44

tation. If she was entitled to any damages for the false imprison-
ment, she certainly was entitled to damages for the illegal arrest.
Not only could the jury, under this first count, give her damages
as compensation for wounded feelings and humiliation, but they
were also authorized on this count to give punitive damages. I
can not bring my mind to the conclusion that the $2,500 found
on this count, under the allegations and the proof (even when
considered in connection with the allegations of this count only),
was excessive.

I do not concur in the statement in the opinion that the verdict
on the third count necessarily found that while the arrest was il-
legal, it was not malicious. There was contention—in fact one of
the principal defenses relied on as to the third count was—that
the prosecution of the plaintiff was not by authority of the defend-
ant, but that the case was prosecuted without its consent and with-
out its authority; and the judge very properly instructed the jury,
as to this question, that before they could find a verdict for the
plaintiff on this count, they must find, from a preponderance of the
evidence, that the prosecution was without probable cause, was
malicious, and was by authority of the defendant. It is not be-
yond the evidence to conclude that the jury may have thought that
the prosecution was both malicious and without probable cause, yet
that the defendant was not responsible for the prosecution and was
not liable on this count. The decision in the *Fleming* case, supra,
cited by Judge Powell, and by Judge Russell in his specially con-
curring opinion, I think does not furnish legitimate ground for
holding that the verdict on the first count in this case, under the
allegations of damages in that count, was in any sense excessive.
I might dispose of the point by stating that the Justice who wrote
the opinion in that case was simply expressing his personal view
on the amount of the verdict. He did not speak for the court, for
that question was not an issue in the case. The facts in that case
did not show that the plaintiff was actually arrested, but showed that
his arrest was constructive, and was attended with no element what-
ever of aggravation, either in the act or the intention, and it may
have been true that under the facts of that case $1,000 was ex-
cessive. In the present case there was an actual arrest without a
warrant. The verdict found that there was great humiliation and
damage to the feelings of the plaintiff. Judge Powell justly says

that there were certain facts of aggravation which the jury might well have considered on the question of punitive damages, to wit, the refusal of the defendant or its agent to permit the plaintiff to go to her home, where she had three small female children, to make necessary provision for their protection while she was under arrest and away from them. To sum the whole matter up, and without extending this discussion, which is necessarily without profit, save as a matter of personal satisfaction to the Judge who renders the dissent, I do not think the charge complained of was so confusing and misleading as to require the direction that the plaintiff write off the amount of the verdict on this count or take the risk of total loss of compensation for the wrongs done her; and I certainly think that under the facts of the case we can not say that the verdict was excessive under the first count, in view of the very broad latitude which the law gives to the jury in determining the amount of damages of this character.