COOPER *et al.* v. LUNSFORD, Ordinary, *et al.*

No. 16013. NOVEMBER 12, 1947. REHEARING DENIED DECEMBER 2, 1947.

*R. S. Foy* and *Martin, Martin & Snow,* for plaintiffs.
*Foley & Chappell, Forrest L. Champion Jr., Samuel E. Kelly Jr.,* and *Hubert Calhoun,* for defendants.

ATKINSON, Justice. (After stating the foregoing facts.) A determination of the correctness of the rulings of the trial judge will be found in the answers to four questions, to wit:

(1) Did the granting of criminal jurisdiction to the courts of ordinary for the disposition of traffic-law violations by the act of 1938 (Ga. L. Ex. Sess. 1937-38, p. 558; Code, Ann. Supp., § 92A-501 et seq.) authorize the establishment of an insolvent-cost fund in that court?

(2) If the act authorized the creation of an insolvent-cost fund, did the ordinary forfeit his right thereto by not paying fines, in excess of costs in each case, over to the county treasury within twenty-four hours after their receipt?

(3) Did the ordinary charge too much costs in the various cases disposed of in that court?

(4) Were the fees paid to the sheriff authorized by law?

In the act of 1938 (Ga. L. Ex. Sess. 1937-38, p. 558; Code, Ann. Supp., § 92A-501) granting criminal jurisdiction to certain courts of ordinary, two references to costs appear. Under sec. 5 (Code, Ann. Supp., § 92A-505) it is stated: "Arresting officer, the same costs as now allowed in Superior Court;" and the section then specifies the costs for issuing warrants and for docketing and disposing of cases. Under sec. 7 it is provided: "And in case fine is imposed and paid, the officers of court (where on fee basis) shall be first paid their costs arising in such case, and after the payment of all costs, the remainder of such fine or fines shall be paid into the county treasury, in the event the case is disposed of by the court of ordinary." It must be noted that, where a fine is paid, the officers shall be "first paid their costs arising in such case," and then provision is made for the disposition of the fine "after the payment of all costs." To construe this provision as meaning that the officers would receive costs only in the particular case where the fine was paid, then it would be necessary to entirely disregard the phrase, "and after the payment of all costs."

There is no specific provision contained in the act as to the final disposition of fines in excess of costs in each particular case. The act merely directs that such excess be paid into the county treasury, and is silent as to whether it shall constitute an insolvent-cost fund, or whether it shall be used for general county

purposes. It is clear that this fund must be paid into the county treasury, but the act makes no provision as to the manner and purposes for which such fund is to be held.

In determining the intent of the General Assembly, we find another provision in the act that is significant. Sec. 5, in specifying the costs of officers of the court, provides costs for "arresting officer, the same costs as now allowed in superior court." Code, Ann. Supp., § 92A-505. · It must be noted that it provides for the same "costs," not "fees." In the superior court, sheriffs are entitled to costs in cases in which there are no fines paid; the costs in such cases are carried forward and into an insolvent-cost fund; and in cases where the fine exceeds the costs, this excess of fine over costs in the particular case is distributed among the officers according to the priorities prescribed by law. Code, § 27-2903. In order to make the sheriff's costs "the same costs as now allowed in superior court," the act necessarily contemplated that he receive costs in cases where no fine was paid; and the existing law in this State provides for such payment only by and through the creation of an insolvent-cost fund.

Having construed the act as contemplating the creation of an insolvent-cost fund in order to pay the sheriff costs in accordance with its provisions, and the act by its terms making the ordinary an officer of the court and specifying the amount of costs he is to receive in each case, the General Assembly necessarily intended that the ordinary would participate in the insolvent-cost fund.

The construction here given is not negatived by the provision in the act that, "after the payment of all costs, the remainder of such fine or fines shall be paid into the county treasury." Code, Ann. Supp., § 92A-507. Had the act specifically described the creation of an insolvent-cost fund, the county treasury would have been the proper place for the disposition of the funds. The law requires that insolvent-cost funds be placed in the county treasury (Code, § 27-2902), and that such funds be kept separate and distinct from funds arising from other sources. § 27-2904. The officers of court have a lien upon this fund. Code, § 27-2910. The county treasurer is required to make a report upon the receipt and distribution of these funds to the grand jury at each regular term of the superior court. § 27-2907.

■ By section 7 of the act (Code, Ann. Supp., § 92A-597), it is provided that "The payment of such fines . . to . . the county treasury . . shall be made [by the ordinary] within 24 hours after collection." There is no statement in the act declaring what result shall follow noncompliance with this provision. It contains no words prohibiting any other mode of proceeding. It directs the mode of procedure by a public official, designed to promote method, system, uniformity, and dispatch. Accordingly, this provision is directory. *Hudson* v. *Williams,* 5 *Ga. App.* 245, 249 (62 S. E. 1011); *Southern Security Co.* v. *American Discount Co.,* 55 *Ga. App.* 736, 740 (191 S. E. 258). A forfeiture of the fees of the ordinary for a failure to comply with this provision would not be authorized.

■ Did the ordinary charge too much costs in the various cases disposed of in that court? In each case he charged the same fees: issuing warrant $1.25, docketing and trial $3, furnishing certified copy of sentence and judgment to the Department of Public Safety $2.25. There is no attack made on the charge of $3 for docketing and trial, but the charges for issuing warrant and for furnishing certified copy to the Department of Public Safety are challenged.

■ As to issuing a warrant, the charge of $1.25 is the amount provided for under the act; but the commissioners take the position that it was unnecessary to issue a warrant in many of the cases disposed of, and that the charge is therefore unwarranted. On this question it was agreed that "a warrant was issued . . in each case, . . but in many of those cases the defendant was then before the ordinary and desired to enter a plea of guilty . . or be tried by the ordinary without a jury." Under section 6 of the act (Code, Ann. Supp., § 92A-506), it is provided that "An indictment or accusation shall not be required against a defendant, . . but a summons specifically setting out the charge shall be issued." At the time of the passage of this act, the law of this State contemplated that every arrest, either for a misdemeanor or felony, would be made under a warrant or, if made without a warrant, under circumstances set forth in the Code, § 27-212, that a warrant would be issued within a reasonable time and before the trial of the defendant. *Piedmont Hotel Co.* v. *Henderson,* 9 *Ga. App.* 672 (6) (72 S. E. 51). A warrant

must be issued before a justice court can hold a commitment trial. *Crow* v. *State*, 55 *Ga. App.* 288 (190 S. E. 65), and citations. Under section 2 of the act (Code, Ann. Supp., § 92A-502), it is stated that "the court of ordinary shall have jurisdiction to issue warrants;" and where a warrant is, in fact, issued, we do not think that his right and jurisdiction so to do is limited to any particular instances.

Nor do we see any limitation on his right to issue a warrant by reason of the act (Code, Ann. Supp., § 92A-505), in providing for the ordinary's cost, stating, "warrant, if issued, $1.25." This merely fixes the amount of that item of costs where the warrant is issued by the ordinary. This act (Code, Ann. Supp., § 92A-501 et seq.) creates a court for the trial of certain defined misdemeanor cases, and is not confined to the trial of cases wherein the ordinary issues the warrant. There may be instances where the warrant is issued by a justice of the peace, and the defendant under Code, § 27-407, is committed to the court of ordinary for trial. And in such a case, there being a warrant, there would be no authority for the ordinary to issue another.

█ Was the ordinary authorized to charge, as part of the costs in each case, $2.25 for a certified copy of the sentence and judgment sent to the Department of Public Safety? In the stipulation of facts it was agreed that this had been done in each case disposed of before the court of ordinary, and there was no issue as to the charge of $2.25 being a correct charge for a certified copy; but the commissioners contended that the ordinary was not authorized to include this item as a part of the court costs.

The act of 1938 (Ga. L. Ex. Sess. 1937-38, p. 558; Code, Ann. Supp., § 92A-501 et seq.), which gave certain criminal jurisdiction to the court of ordinary, makes no reference to this item as part of the court costs. In the act of 1937 (Ga. L. 1937, p. 322; Code, Ann. Supp., § 92A-101 et seq.), which created the Department of Public Safety, in art. 4, sec. 1 (p. 341; Code, Ann. Supp., § 92A-9904) it is made a limited misdemeanor (excepting certain persons) to operate a motor vehicle upon a public highway without a license; and then by art. 4, sec. 10 (p. 348; § 92A-9907) it is made a like violation to operate such vehicle after the license has been suspended, canceled, or revoked; and then in the latter

part of the same section (§ 92A-9908) it is stated: "Upon the conviction of any licensee . . of any offense, of driving . . while intoxicated, or . . while engaged in a felony, or deliberately, wilfully or negligently violating any traffic law, . . the court is hereby given authority . . to cancel or suspend the license, . . and . . place such licensee under probation. . . It shall be the duty of the clerk of the court trying the case to immediately transmit a certified copy of the sentence and judgment to the Department of Public Safety. The clerk to receive his usual cost of such certificate."

Though this act was passed prior to the creation of the court of ordinary as a criminal court for traffic violations, it is clear that the General Assembly intended for a certified copy of the sentence and judgment sent to the Department of Public Safety to be a part of the costs due the clerks of court in which the case was disposed of. When the court of ordinary was subsequently given jurisdiction for the disposition of such cases, this item became a part of the costs due the clerk of that court, as every court of ordinary has a clerk or an ex officio clerk. Code, § 24-1801.

But under this section the item would become a part of the court costs only where there was a sentence and judgment against a licensee for such violations as are enumerated in this section. It would not be a part of the costs where the accused was acquitted, the case transferred, the charge was based on the accused not having a license, or other violations not covered by the terms of art. 4, sec. 10.

By reference to the tabulation of the fines and items deducted as costs, which by the stipulation of facts is agreed to be correct, and is also admitted by the answer, there appear some instances of this item of costs being charged where the accused was found not guilty; and there is nothing in the record to indicate which cases, where fines were interposed and this item of costs was charged, were such cases as were covered by sec. 10. Accordingly, the charge for a certified copy of sentence and judgment, in cases other than those described in sec. 10, was not proper.

It was therefore error to permit this item of costs in the twenty-five cases, as shown on the tabulation, where defendants were found not guilty.

As to other cases listed on the tabulation, there is nothing to show that they were not such as were provided for under art. 4, sec. 10, in which this item of costs would be proper; nor is there anything in the stipulation of facts which would identify any other cases listed in the tabulation as not being cases provided for under art. 4, sec. 10; and the burden of proof so to do was on the commissioners.

In the same act of 1937 (p. 322; Code, Ann. Supp., § 92A-101 et seq.), creating the Department of Public Safety, and following art. 4, sec. 10, above discussed, sec. 13 (Code, Ann. Supp., § 92A-430) makes provision for the maintenance of certain records as follows: "The clerks of the courts of this State shall furnish to the Department of Public Safety a report of each case involving an offense under the provisions of this act on a form to be furnished by the Department of Public Safety upon the payment by such department of the customary fee." This is an entirely different document from the certified copy of the sentence and judgment as required under sec. 10 of the act. The fact that the act of 1939 (Ga. L. 1939, p. 135) amended sec. 13 of the act of 1937, (p. 322), so that the Department of Public Safety would pay twenty-five cents for each report instead of the "customary fee," had no effect upon sec. 10 of the act of 1937 (p. 322), which provided costs for the certified copy of sentence and judgment.

■ Were the fees paid the sheriff authorized by law? In the stipulation of facts it was agreed that the sheriff actually performed all of the duties for which costs were charged and paid to him by the ordinary; but that in some instances the sheriff made the affidavit upon which the warrant issued by the ordinary was predicated, made the arrest, and charged a fee therefor as part of his costs; and further that the ordinary paid the fees to the sheriff upon an oral statement, and in no case was there a written itemized bill of costs submitted to the ordinary. (Whether this item in the sheriff's cost bill was for "serving a warrant" or for "apprehending a person suspected," is not raised by the pleadings, and only one item for such service is included in each cost bill.)

Under the facts the commissioners raise two questions and insist: (a) that the sheriff would not be entitled to costs as an ar-

resting officer under warrants where he had made the affidavit and had become the prosecutor in the case; and (b) that the sheriff was not entitled to any costs whatever where he did not present to the ordinary a written itemized statement of costs in each case.

■ It is against the policy of the law for a person, who makes the affidavit upon which a warrant is issued, to make the arrest thereunder. *McCray* v. *State,* 134 *Ga.* 416, 426 (10) (68 S. E. 62, 20 Ann. Cas. 101), and citations. The legality of the arrest often becomes a material question, as between the State and the accused, in certain criminal cases. It might also be relevant to issues in certain civil suits as between the party arrested and the one arresting. But as between the county commissioners and the officers of court, upon the question of the sheriff's right to costs for making an arrest, even though it be illegally made, the commissioners, not being a party to the warrant, could not collaterally attack the legality of the arrest, and therefore question the sheriff's right to costs thereunder.

■ It was agreed in the stipulation of facts that the sheriff had actually performed all duties for which he had received costs in the various cases. The law (Code, §§ 27-2905, 27-2906) contemplates that an officer having a claim against an insolvent-cost fund should present an itemized statement of costs before being approved. But where it is agreed that the sheriff had performed service for each item for which he had received costs, and there is no issue as to the correctness of his cost bill, except his legal right to receive any costs on items constituting his cost bill, his failure to file a written itemized cost bill should not operate as a forfeiture of such costs as he had received, or his right to participate in an insolvent-cost fund. The pleadings and the agreed statement of facts in this case show that there was on record in the court of ordinary a statement of the sheriff's costs in each case; and while it appears from the record that this statement was prepared by the ordinary, yet, even so, it furnished a substantial compliance with the requirements of the Code, § 102-102 (6), as the ordinary was the proper official to approve the cost bill.

Accordingly, the judgment is affirmed, except as to such items as are designated in division 3 (b) of this opinion as having been

improperly allowed as part of the ordinary's cost bill, and reversed as to those items.

*Judgment affirmed in part, and reversed in part. All the Justices concur, except Bell, J., disqualified, and Wyatt, J., who took no part in the consideration or decision of this case.*