COMER *et al.*, receivers, *v.* FOLEY.

1. Although a railroad company in Illinois may be the agent of the receiver of a railroad in Georgia to sell in Chicago tickets from that city to Jacksonville, Fla., and return, with coupons thereon for passage over the railroad operated by the receiver, each of such tickets having upon it a special contract to be signed by the original purchaser, and stipulating that the ticket should be used by him only, there is no presumption that the Illinois company was authorized by the receiver, directly or indirectly, to place in the hands of a ticket broker, or " scalper," for sale in Atlanta, Ga., tickets of this kind, stamped at the Chicago office of the Illinois company, but with the contract thereon unsigned by any purchaser, and with the coupons for the railroads between Chicago and Atlanta detached.

2. Where a ticket broker in Atlanta sold one of these tickets, it being at the time in the condition just described, and also bearing the signature of an agent of the Illinois company, preceded by the word " witness," this signature being placed upon the ticket exactly as it would have been had this agent, as a

witness, actually attested the signature of a purchaser of the ticket in Chicago, the real purchaser from the broker in Atlanta had no right, under these circumstances, to assume that the sale to him by the broker was regular and authorized, or to occupy the position of a *bona fide* first and original purchaser.

3. In a case involving the validity, upon the railroad operated by the receiver, of such a ticket sold and purchased as above indicated, it was incumbent on the plaintiff, who asserted that the ticket was good over that railroad, to show affirmatively that he was entitled to use it as an original purchaser, by proving that the sale by the broker was authorized, or at least connived at, by the receiver.

4. The plaintiff was not entitled to recover; and even if he had been, the amount of the verdict was grossly excessive, and ought, for this reason, if for no other, to have been promptly set aside by the trial judge.

*Atkinson, J.*, concurring specially.

August 24, 1896. Argued at the last term.

Action for damages. Before Judge MacDonell. City Court of Savannah. February term, 1895.

*Lawton & Cunningham*, for plaintiff in error.

*Barrow & Osborne*, contra.

SIMMONS, Chief Justice.

It appears from the record, that in 1894 there were in use tickets issued by the Chicago & Eastern Illinois Railroad Company, in the form of a "round trip ticket," for passage over that road and connecting railroads from Chicago, Illinois, to Jacksonville, Florida, and return, there being for each railroad a separate coupon upon which appeared the names of the places between which it was good for passage, together with the names of the other railroads and the statement that it was issued by the Chicago & Eastern Illinois Railroad Company. Among these coupons was one for passage over the Central Railroad of Georgia, from Atlanta to Savannah. The ticket stated that it was "good for one first-class passage to Jacksonville, Florida., and return, when officially stamped, subject to the following conditions. . . It is not transferable. . . I, the original pur-

chaser, hereby agree to sign my name, and otherwise iden-
tify myself as such, whenever called upon to do so by any
conductor or agent of the line or lines over which the
ticket reads. . . The purchaser's signature must be in man-
uscript and in ink. . . Unless all the conditions on this
ticket are fully complied with, it shall be void. In con-
sideration of the reduced rate at which this ticket is sold,
I agree to the above contract." A number of these tickets
purporting to be signed by the purchasers in the presence
of C. C. Hill, agent of the Chicago & Eastern Illinois Rail-
road Company, at Chicago, were presented for passage on
the Central Railroad of Georgia and accepted. About
April 1st, 1894, about which time several of these tickets
were presented and accepted on the Central Railroad, a
ticket of the same class, but not signed by any person as
purchaser, though, under the blank space intended for the
signature of the purchaser, the name of the above men-
tioned agent at Chicago purported to be signed as "witness,"
was presented on a train of the Central Railroad for passage
from Atlanta to Savannah, but the holder was refused
passage thereon and was required by the conductor to pay
his fare. The holder, who had bought the ticket from a
"ticket scalper" at Atlanta, returned it to the "scalper,"
and the latter, on April 4, 1894, sold it to James Foley.
Foley signed the contract upon the ticket, as "purchaser,"
and presented it to the conductor on a train of the Central
Railroad for passage from Atlanta to Savannah. The con-
ductor, after tearing off the coupon for passage between
these points, inquired of him where he had purchased the
ticket. Foley replied that the conductor could see that on
the face of the ticket. The conductor told him it was a bad
ticket, and he would have to pay his fare or be put off. He
declined to pay his fare, saying that he was unable to do so,
and the conductor required him to leave the train at the
next station. Upon leaving the train he found at the
station a train which was on its way to Atlanta, and he re-

turned on that train.   Subsequently he sued the receivers of the Central Railroad for damages, alleging that he was a *bona fide* purchaser of the ticket and had a right to ride thereon.   At the trial the facts above stated appeared in evidence.   It also appeared that when the plaintiff bought the ticket, the coupons for passage between Chicago and Atlanta had been torn off, that it purported to have been sold on March 28th, 1894, several days before the date on which he purchased it, and that he had examined and read the ticket.   He testified, however, that he did not know that any other person had used it before he bought it, and that the "scalper" told him that this and similar tickets which he had for sale were issued in blank to him by the Chicago & Eastern Illinois Railroad Company.   The "scalper" was introduced by the plaintiff as a witness, and testified that he did not receive the ticket directly from the Chicago & Eastern Illinois Railroad Company, but that his agent in Chicago bought it from the company and there sold it to a passenger, with a rebate on him (the witness), and that the passenger turned it over to him in Atlanta in the condition it was in when sold to the plaintiff.   The defendants introduced no evidence.   There was a verdict for the plaintiff for $1,300, and the defendants made a motion for a new trial, which was overruled, and they excepted.

Although the evidence may have been sufficient to establish the agency of the Chicago & Eastern Illinois Railroad Company to issue in behalf of the defendant tickets of this kind to persons purchasing and signing the same at Chicago (see *Spencer et al., receivers,* v. *Lovejoy,* 96 *Ga.* 657), the evidence does not warrant the inference that the company at Chicago was authorized by the defendant, directly or indirectly, to dispense with such signing and to issue such tickets with the understanding that they were to be transferable.   So far as appears, all tickets of this kind which were accepted on the Central Railroad purported to have been signed by the original purchaser in the

presence of the agent at Chicago, and the defendants and the conductors who accepted the same did not know that any of them were signed elsewhere or that the persons using the same were not the original purchasers. Moreover, it does not appear that the company at Chicago or its agent who sold the ticket in question knew that the purchaser was a dealer in tickets, or that it was bought for the purpose of being sold again or used by more than one person. It appears that other tickets in the same condition came into the hands of the "scalper," but it does not appear that they were bought from the company at one time, nor under what circumstances they were bought. Assuming, however, that the company at Chicago sold with full knowledge of the facts and consented to the use of the ticket by others than the original purchaser and that the signing at Chicago should be dispensed with, were the receivers of the Central Railroad, in the absence of any proof that this was either directly or indirectly authorized by them, bound by such knowledge and waiver? So far as the evidence discloses, the authority of the company at Chicago was at most that of a special agent, and was confined to the issuing of a particular form of ticket, to be good only under the conditions stated therein; and in special agencies the rule is that if the agent exceeds the special and limited authority conferred upon him, the principal is not bound by his acts, but they are mere nullities, so far as he is concerned, unless he has held the agent out as possessing a more enlarged authority. (Story on Agency, §126; Code, §2196.) Moreover, in order to hold the defendants bound, the plaintiff must have acted in good faith himself and must have relied upon the apparent authority of the agent. Here was a ticket which expressly stated that it was "not transferable," and which purported to have been sold at Chicago on the date stamped thereon, and which was offered for sale by a person who was not an agent of the railroad company, but a "scalper," a dealer in tickets originally purchased by

others; and when the plaintiff signed the conditions of the ticket, knowing as he did that the signer was described therein as the original purchaser, and that it purported to have been signed at Chicago in the presence of the agent whose name appeared thereon, he did so evidently under the impression that, in order to use the ticket on the railroad operated by the defendants, it was necessary that it should appear that he was the original purchaser and had signed it in Chicago in the presence of the agent. Why should he do this, and why should he attempt to mislead the conductor by telling him when asked where he had purchased the ticket, that he (the conductor) would see by looking at it, unless he supposed that the conditions stated therein would be insisted upon and that he would be refused passage on it if the facts were not as they appeared to be from the ticket? It seems clear to us, under these circumstances, that the plaintiff was not entitled to be treated as a purchaser in good faith and without notice, but on the contrary, that the facts were such as to put him on notice that the sale was irregular and unauthorized by the defendant. Upon the whole, therefore, we think the plaintiff failed to make out his case. See on this subject the following authorities cited by counsel: Drummond v. Southern Pacific Ry. Co., 25 Am. Rep. 733; Post v. Chicago etc. R. Co., 45 Am. Rep. 100; Houston & Texas Central R. Co., 53 Tex. 364, 2 Am. & Eng. R. Cas. 514; Frank v. Ingalls, 42 Oh. St. 560, 21 Am. & Eng. R. Cas. 277.

The retention of the coupon by the conductor, if it afforded any ground for a recovery at all, did not render the defendants liable for the refusal to allow the plaintiff to ride on it,—the only ground upon which damages are sued for in this action.

Moreover, if the plaintiff had been entitled to a verdict in his favor, he was not entitled to one for $1,300. This was grossly excessive. There were no aggravating circumstances. His person was not touched, and there was no

insulting language or other improper demonstration on the part of the conductor or any other employee of the defendants. The conductor simply informed him that the ticket was bad and that he would have to pay his fare or be put off, and upon his declining to pay, insisted that he should get off at the next station, which he did. As already stated, upon his leaving the train he met another on its way to Atlanta, and returned on it; and on the next night he resumed his journey to Savannah. There was no evidence as to any pecuniary loss outside of the amount paid for his fare. It is manifest, therefore, that the amount of the recovery is out of all reasonable proportion to the extent of the injury. See *Ga. R. R.* v. *Jett,* 95 *Ga.* 237; *Ga. R. R.* v. *Eskew,* 86 *Ga.* 646; *C. R.* v. *Strickland,* 90 *Ga.* 562.

*Judgment reversed.*

ATKINSON, Justice, concurring.

I concur in the judgment of reversal, for the sole reason that the verdict is excessive. I dissent from the views of the majority of the court, as stated in the first three headnotes and in the opinion; the true law of the case being, in my opinion, as follows:

Where one of a number of connecting lines of railway issues passenger tickets of a particular class purporting to entitle purchasers thereof to transportation as passengers over each of such lines, the customary acceptance of such tickets by another of such lines for passage upon its trains will, in the absence of evidence to the contrary, authorize the presumption that the line issuing the tickets had a general authority as agent of the line so accepting the same to issue tickets of that class.

If the railway company assuming to exercise such right to issue tickets be under a duty to its connecting lines to issue tickets of a particular class and drawn according to a particular formula only, but in dealing with such tickets neglects to conform in all respects to the requirements of the formula prescribing how and in what manner they shall

be emitted, a failure to perform this latter duty, resulting in damage to one of the connecting lines, makes a question between such connecting line and the line issuing the ticket, and persons purchasing such tickets from one having the apparent right to sell will be protected.

Where in such a case a number of such tickets are issued, and according to the printed contract appearing thereon it is required that an intending purchaser shall sign the same in the presence of the agent selling, who shall subscribe his name as a witness to such signature, and it is further provided that such tickets shall be good in the hands of the first purchaser only, if the company by which such tickets are issued permits its usual selling agent to sign in blank a number of such tickets and emit them without requiring the purchaser to sign the special contract thereon as required by the prescribed formula, and in this condition sells them either singly or in quantities to third persons who purchase for the purpose of selling again to any person who may chance to come along, it will be presumed in favor of an innocent purchaser of one of such tickets, without further notice as to any limitation upon the authority of the company issuing the same than that conveyed by the tickets themselves, that such action was duly authorized, and that the companies upon whose account they were issued intended to waive the signing of the name of the purchaser for passage in the actual presence of the agent whose name is subscribed as a witness for the company, and as well the condition restraining their negotiability in the hands of the persons to whom they have been sold for the purposes aforesaid.

The mere fact that the tickets so issued and emitted purport to be through tickets with separate coupons for each connecting line, does not render their actual sale to an intending passenger at the initial point indispensable to their validity, and such a ticket emitted under the circumstances indicated, whether purchased at the initial point or else-

where by an intending passenger, entitles him to transportation upon any one or more of the intermediate connecting lines, if offered in connection with the appropriate coupon.