25133. W. & J. SLOANE SELLING AGENTS INCORPORATED *v.* TAMPA CHAIR AND TABLE COMPANY.

610

*Harold Hirsch, Marion Smith, M. E. Kilpatrick,* for plaintiff in error.

*Burress & Dillard,* contra.

STEPHENS, J. Tampa Chair and Table Company, hereinafter called the chair company, sued W. & J. Sloane Selling Agents Inc., hereinafter called the Sloane Company, alleging damages by reason of a breach of contract. It was alleged that on May 30, 1934, the plaintiff gave to the defendant an order for floor covering (copy being attached to the petition), for which it was to pay $5077.01, and the defendant required the plaintiff to place with it, when accepting the order, a certified check for $3000, which was to be used as part of the purchase-price, which the plaintiff did; that thereafter the defendant returned to the plaintiff the check and refused to carry out the sale agreement, and breached the same; that if the defendant had shipped the floor coverings according to agreement, it would have reached the plaintiff at Tampa, Florida, within fifteen to twenty days; that in the meantime the market price of the floor coverings referred to in the order had increased in the sum of $384.81, for which amount the plaintiff prayed judgment.

The defendant answered, denying all the allegations of the petition, except paragraph 1, which alleged facts giving the court jurisdiction. Afterwards the answer was so amended as to allege that the order for goods on which the suit was based was never accepted by the defendant in writing by a person duly authorized to bind the defendant; and being for the sale of goods, etc., to the amount of over $50, it was within the statute of frauds, there having been no execution of the alleged contract and no performance on one side accepted by the other, "defendant denying, moreover, that said writing constituted a contract, the same being a mere offer to buy, requiring the written acceptance of both William A. Sale, sales manager of the defendant company, and of its credit manager, before becoming a binding contract, and this acceptance was never so given orally or in writing;" that J. H.

McChesney, who solicited the order for the defendant, was a mere traveling salesman with authority only to solicit orders from prospective purchasers and to submit the same to the sales manager and credit manager of the defendant for acceptance or rejection, McChesney having no authority to accept offers or to make any contracts for sale or sales on behalf of the defendant. After hearing the evidence and the charge of the court, the jury rendered a verdict for the plaintiff in the amount sued for. The defendant moved for a new trial on the general grounds, which were elaborated by an amendment alleging that the verdict was contrary to certain instructions by the court and to certain detailed evidence. The motion for new trial was overruled, and the defendant excepted.

The evidence is without conflict, and is as follows: J. H. McChesney was a traveling salesman for the defendant. His authority was limited to procuring orders for goods and forwarding them to the defendant's office in New York for acceptance or rejection. On May 30, 1934, he obtained from the plaintiff an order for the purchase of goods to the amount of about $5000, on terms noted on the order. The defendant's Atlanta office sent this order to the defendant on May 31, in a letter which advised that the plaintiff did not have sufficient credit rating, and that the order be held for further advice from McChesney and the plaintiff. On June 5, a letter signed by W. & J. Sloane, by the credit manager, C. N. Jolliffe, and addressed to Fulton Metal-Bed Manufacturing Company, advised that McChesney had forwarded to New York the order from the plaintiff company, stated the insufficient financial ability of the plaintiff, and asked for information as to its condition. It appeared that W. J. Atkinson owned stock and was president of both the metal-bed company and the plaintiff company. On June 7, the defendant wrote to McChesney, enclosing duplicate copies of the order from the plaintiff, and advising that from reports from the credit department it appeared that arrangements were not satisfactory. On June 7, the metal-bed company wrote to the defendant proposing to guarantee the account of the plaintiff company, and enclosing a guaranty contract. On June 13, the defendant, by C. N. Jolliffe, wrote to the metal-bed company, enclosing the guaranty contract, and advising that the guarantee was not sufficient, that the plaintiff's order could not be

shipped on open account, and expressing the hope that at some future date some satisfactory arrangements might be made. On June 14, McChesney telegraphed to the defendant that Atkinson of the Fulton Bed Company wanted to know on that day the status of the order submitted by the plaintiff. On the same day the defendant, by C. N. Jolliffe, telegraphed McChesney, referring to the letter of June 13, and advising that the credit manager of W. & J. Sloane could not accept the order. On June 15 McChesney telegraphed W. & J. Sloane, attention C. N. Jolliffe, that Fulton Bed Company was willing to give certified check of $3000 that date, and requesting reply if this met with Jolliffe's approval. On June 15 a telegram signed "W. & J. Sloane Selling Agents Inc., by C. N. Jolliffe," and addressed to McChesney, stated in substance: "Regarding telegram Fulton Bed will accept certified check $3000 and release car, $3500, the balance to be paid upon receipt stop telegraph when check in your possession and we will release." On June 16 a certified check of Fulton Bed Company for $3000, payable to the defendant, was delivered to McChesney. On June 18 a telegram to McChesney, signed in defendant's name "by William A. Sale," stated that the defendant could not accept the order from the plaintiff, and it was accordingly refused. Thereupon McChesney returned the check to the bed company stating that the defendant would not accept the order, and wired the plaintiff in Tampa to this effect. The original order, a copy of which was attached to the petition, had on it a "notice to customers," stating that the order was subject to approval and acceptance by W. & J. Sloane, New York.

W. A. Sale testified for the defendant that he was sales manager of the linoleum and felt-base department; that the defendant's business was departmentized, there being a sales division handling wool goods, a second sales division handling linoleum and felt base, and a credit department handling credits for the entire proposition; that E. B. Hayes assisted by C. N. Jolliffe was in charge of the credit department; that McChesney was a sales representative of the linoleum and felt-base department, but had no authority to accept orders and approve them; that the "practice when an order is received and approved is first to send it to our credit department for approval or rejection; if approved, it is then submitted to me to be passed upon, and if approved is ini-

tialed by me. If the credit department approves, it is initialed by Mr. Jolliffe of the credit department; and if I approve, then I initial the order. My initials do not appear on the order or orders marked on defendant's exhibit No. 1; nor do Mr. Jolliffe's initials appear thereon by way of approval, but only in the manner of recording a cancellation June 15, 1934. In other words, the home office did not approve this order." McChesney testified that he was a traveling salesman for the defendant, and his only authority was to accept orders and send them in for acceptance or rejection, that he had no authority to bind the company by making a contract, and did not accept this order except to send it on to the company for their approval or disapproval.

The telegram of June 15, in which Jolliffe stated, "Regarding telegram Fulton Bed will accept certified check $3000 and release car $3500 the balance to be paid upon receipt stop telegraph when check in your possession and we will release," was a new sales proposition which modified the terms of the original order. Therefore, measured by the uncontradicted testimony of Mr. Sale, Jolliffe overstepped the bounds of his authority, unless the telegram be construed as approving only the credit feature of the transaction. By the evidence it was not shown that Jolliffe had the authority of his principal to make a binding contract of sale. He was not an officer of the defendant company, but only an employee with limited authority. The plaintiff who seeks to recover against the defendant by reason of the relation of principal and agent between two persons has the burden of proving the fact of the agency. Agency cannot be proved by the declarations of the agent or by his assumption to do an act on behalf of another. No ratification was shown in this case. The defendant promptly repudiated Jolliffe's telegram by refusing to carry on, and by returning the certified check to the metal-bed company. It does not appear that this check was ever sent to the New York office, but certainly the defendant did not use it. Under the facts Jolliffe was a special agent only, and notice of the capacity in which he was acting was conveyed to the plaintiff in the letter of June 5, in which Jolliffe designated himself as "credit manager." The president of the plaintiff company was also president of the Fulton Metal-Bed Company, and this letter of June 5 was the turning point in their negotiations after which the metal-bed com-

pany acted for the plaintiff company in efforts to satisfy the credit requirements of the defendant and get the plaintiff's order approved. The Code of 1933, § 4-301, declares: "In special agencies for a particular purpose, persons dealing with the agent should examine his authority." In *Comer* v. *Foley*, 98 *Ga.* 678, 682 (25 S. E. 671), the court said: "In special agencies the rule is that if the agent exceeds the special and limited authority conferred upon him, the principal is not bound by his acts, but they are mere nullities, so far as he is concerned, unless he has held the agent out as possessing a more enlarged authority." Citing Story on. Agency, § 126. See also *Harris Loan Co.* v. *Elliott & Hatch Co.*, 110 *Ga.* 302 (34 S. E. 1036); *Diamond Hill Gin Co.* v. *Swift & Co.*, 27 *Ga. App.* 95 (107 S. E. 350); *Thompson-Caulhorn Motor Co.* v. *Ross*, 37 *Ga. App.* 105 (139 S. E. 89); *Wise* v. *Mohawk Rubber Co.*, 23 *Ga. App.* 255 (98 S. E. 100); *Cable Co.* v. *Hancock*, 2 *Ga. App.* 73 (58 S. E. 319). There is no evidence that the defendant company in any way held out its credit manager as having authority to make a sale. There was no course of dealings from which such authority could be inferred. The function of a credit manager is to pass on the financial risk involved, but a favorable report by him can not take the place of assent by his principal to the sale. Under these views as to the law it was error to overrule the general grounds of the motion and the five special grounds which particularize on the general ground that the verdict was contrary to law and to the evidence.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*