28511. CONOLY *v.* IMPERIAL TOBACCO COMPANY *et al.*

Decided December 5, 1940.

884

*Robert R. Forrester, C. A. Christian,* for plaintiff.

*R. D. Smith,* for defendants.

STEPHENS, P. J. (After stating the foregoing facts.) The suit is against the tobacco company and Lassiter, to recover damages in behalf of the plaintiff's minor son for illegal arrest and false imprisonment by the defendants. The suit was originally against these defendants and John Duffy, a policeman of the City of Tifton, and by amendment this defendant was stricken.

1. An arrest can be made by an officer without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant. Code, § 27-207. "A private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge; and if the offense is a felony, and the offender is escaping, or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion." Code, § 27-211. Unless an arrest by an officer or another person without a warrant falls within the exceptions specified in the above-cited Code section it is an illegal arrest. *Jackson v. State,* 7 *Ga. App.* 414 (66 S. E. 982); *Holliday v. Coleman,* 12 *Ga. App.* 779, 780 (78 S. E. 482); *Waters v. National Woolen Mills,* 142 *Ga.* 133 (82 S. E. 535). "In every case of an arrest without warrant, the person arresting shall, without delay, convey the offender before the most convenient officer

authorized to receive an affidavit and issue a warrant. No such imprisonment shall be legal beyond a reasonable time allowed for this purpose." Code, § 27-212. "False imprisonment consists in the unlawful detention of the person of another, for any length of time, whereby he is deprived of his personal liberty." Code, § 105-901. There is no contention that there was any warrant for Jack Conoly or any of the other boys, nor does the evidence show any of the exceptions specified in Code, § 27-207. Unless an arrest without a warrant falls within the three exceptions specified in this section it is an illegal arrest. *Jackson* v. *State,* and *Holliday* v. *Coleman,* supra. It appears undisputed from the evidence that neither Duffy nor Lassiter had a warrant for the arrest of Jack Conoly when he was taken from the schoolhouse by them. Nor did they thereafter take him before any magistrate. There is no contention that Jack or any of the other boys had committed an offense in the presence of the policeman or of Lassiter, or that he was endeavoring to escape, or that for any other cause there would likely be a failure of justice for want of an officer to issue a warrant.

In an action to recover damages for an illegal arrest and false imprisonment the only essential elements of the action are the arrest or detention and the unlawfulness thereof. *Waters* v. *National Woolen Mills,* supra. An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act indicating an intention to take such person into custody, and which subjects such person to the actual control and will of the person making the arrest. It is sufficient if the arrested person understands that he is in the power of the one arresting and submits in consequence thereof. The taking of another into custody for the purpose of investigating an alleged crime constitutes an arrest. See Restatement Law of Torts, § 112; *Hines* v. *Adams,* 27 *Ga. App.* 155 (107 S. E. 618); *Turney* v. *Rhodes,* 42 *Ga. App.* 104 (155 S. E. 112). Any restraint, however slight upon another's liberty to come and go as he pleases, constitutes an arrest. There is an illegal arrest and false imprisonment of another where he is detained for any length of time against his will. *Turney* v. *Rhodes,* and *Waters* v. *National Woolen Mills,* supra.

It can not be said as a matter of law under the circumstances in the evidence that the plaintiff's son went voluntarily with the

police officer and Lassiter from the school. An accusation by a police officer to a child that the child has committed a wrong, and any suggestion, however mild, made by the police officer, in the nature of an order or direction that the child accompany the police officer, and a response by the child to such direction by accompanying the officer, may constitute an arrest and a restraint of the child's liberty. It is inferable that the direction to the child that he come with the police officer was an order which the child must obey, and the going of the child in response thereto can not as a matter of law be said to be a voluntary act of the child.

The evidence was uncontradicted that Jack and the other boys were first carried by the policeman and Lassiter in the latter's automobile to the place where Jack's father worked; that there Jack's father demanded of the policeman and Lassiter that his boy be released; that they refused to release the boy; that they carried him and the other boys away from the place where his father worked; that his father followed in another automobile and caught up with the automobile in which the policeman and Lassiter had the boys at another place in the City of Tifton; that the father there again demanded that his boy be released; and that the policeman and Lassiter again refused to release him.

In amended ground 18 of the motion for new trial error is assigned on the following charge to the jury: "Right in that connection, gentlemen, quite a bit has been said as to the protest of W. H. Conoly, the father, in regard to the alleged custody of his child, and the fact that he was with the officer in the case—his protest as to that. You of course can consider that—you may consider every fact and circumstance in the case, but it is not necessary that the defendants show that they had the consent of the father in the case. I think if the boy went willingly and voluntarily and not against his will, with the view of making the investigation or to see the parents, the fact that the father offered opposition later would not be material to the suit in this case." The plaintiff contends that when the police officer and Lassiter refused to deliver Jack to his father on the latter's demand, and carried the boy elsewhere, this amounted to a restraint of the liberty of Jack, and that this charge was error in that it instructed the jury that they would be authorized to find for the defendants although Jack may have been detained against his will by the defendants after his

father had demanded that they release him, and that "any detention or restraint of the liberty of the boy after" the demand was made on the policeman and Lassiter by his father that he be released was an illegal restraint of the boy and constituted false imprisonment.

Irrespective of whether Jack voluntarily accompanied the policeman and Lassiter from the schoolhouse, when his father thereafter demanded that the policeman and Lassiter deliver his son to him, their refusal to do so and their retention of the boy in their custody and taking him elsewhere constituted a restraint of the boy's liberty. It is therefore inferable from the evidence that the defendants restrained Jack of his liberty and that this restraint was unlawful. It is suggested that since the child was in school, and in legal custody of the school authorities by virtue of the compulsory school law, that the father had no right to the child or to demand that the child be released, and therefore the refusal of the policeman and Lassiter, with the intention as they claim, to return him to school, is not to be considered as an illegal withholding from the father of the custody of the child. The child had left the custody of the school authorities and had gone (whether voluntarily or under compulsion is immaterial) with the policeman and Lassiter, and it is inferable that they were not holding the child in custody for the school authorities. They had not captured a truant child for the purpose of returning him to school. The school authorities had released the child to the policeman and Lassiter. The policeman and Lassiter afterwards refused to release the child on demand of his father, and this was a restraint of the liberty of the child, not by virtue of any authority to hold him for the school authorities under the compulsory school laws. The act of the policeman and Lassiter in refusing to deliver the child to the father was not at the time predicated on the ground that the father did not have the right to the custody of the child under the compulsory school law. The refusal to deliver Jack to his father on demand, whether or not the father was at the time entitled to the custody of the child, showed an exercise by the policeman and Lassiter of dominion over the child and that they had him in custody and intended to deliver him to whom they pleased.

The evidence clearly authorized the inference that the child was under arrest by the policeman and Lassiter, and the court erred

in charging the jury: "I think if the boy went willingly and voluntarily and not against his will, with the view of making the investigation or to see the parents, the fact that the father offered opposition later would not be material to the suit in this case."

2. The court erred, as complained of in ground 17 of the motion, in charging the jury as follows: "I will state this principle of law for your consideration: that in the State of Georgia at least there are certain conditions or circumstances under which a person may make an arrest. The law declares that any person in whose presence a crime has been committed may arrest the person committing such crime, and an officer, where a crime is committed in his presence, may make an arrest without a warrant. It is further declared that if a felony has been committed and the one who committed such felony is making or endeavoring to make an escape, then a private person may make an arrest. In all other cases a private person must be equipped with a State warrant directing that the person be arrested." There being no evidence whatsoever tending to show, or from which it could be inferred, that any crime was committed in the presence of the policeman or Lassiter by Jack Conoly, or that Jack was endeavoring to escape, the above charge was not authorized by the evidence, and the court erred in so instructing the jury.

3. This is a case of illegal arrest and false imprisonment. Probable cause is not essential to support a case of this kind. However, in an action for causing the plaintiff to be illegally arrested and illegally imprisoned, evidence affording reasonable and probable cause, or suspicion of the plaintiff's guilt, is relevant in mitigation of damages. *Rogers* v. *Toliver,* 139 *Ga.* 281 (77 S. E. 28). Evidence admitted and objected to, to the effect that boys other than Jack Conoly, had, on occasions other than the one involved in the investigation being made by the policeman and Lassiter of the commission of which Jack and the other four boys were accused, been guilty of breaking windows and other trespasses upon the property of the tobacco company; that the policeman Duffy had chased some boys away from the property on previous occasions; and that complaints had been made as to other trespasses several years before the occasion in question, was irrelevant to shed any light upon the legality of the conduct of Lassiter and of the policeman as to the probable guilt or innocence of Jack or

any of the other boys. Statements of the father of one of the boys other than Jack, made after the boys had been taken before him, that his boy had been in trouble before, and such a statement as that his boy had broken a light, were irrelevant. None of the evidence referred to was relevant or admissible for the purpose of mitigating damages. Evidence to the effect that Jack was present when a lock was broken on the door of the tobacco company warehouse; that he had seen windows broken there, that he had admitted being there, and that others of the four boys charged with Jack were guilty of the acts for the commission of which the boys were questioned at the schoolhouse and taken to see their fathers, was relevant in mitigation as tending to show the probable guilt of Jack and the other boys. Evidence of conversations between the police officer and Lassiter with the boys while at the schoolhouse when they were being questioned was relevant and admissible. It was at least relevant as being part of the res gestæ, and its admission was not error.

4. The court erred in admitting the testimony complained of in grounds 4, 6, 7, 8, 9, 11, and 13 of the motion. The testimony, the admission of which is complained of in grounds 5, 10, two grounds marked "12," and 15 of the motion, was relevant and admissible in mitigation of damages.

5. The testimony of Lassiter complained of in ground 14 to the effect that he obtained from the principal of Tifton grammar school the names of the Conoly boy, the Carmichael boy, the Allen boy, the Lipsey boy, and the Smith boy, as the "names of any boys who might be connected with this matter," and that she gave him such names "with the comment that they were not there," and that he "carried that out there," meaning to the schoolhouse, when he and the policeman went there to question the boys, was hearsay and inadmissible.

6. The testimony of Lassiter, as appears in ground 16 of the amended motion, that before he interviewed these boys at the schoolhouse he told Duffy, whom he had asked to accompany him, that he did not propose to arrest these boys, but that if "we could get them to admit that they did it, we could take them to their parents and let them straighten it out," and that "that is the exact purpose I had in mind" in going to the schoolhouse, was admissible as an act by him showing a state of mind and intention which might

negative malice and be considered by the jury in mitigation of damages. The court did not err in admitting this testimony.

7. The charge complained of in ground 19 of the motion, "that it is the holding of a person contrary to his will, and in connection therewith possibly this will throw light on the matter," does not show any error.

8. The evidence authorized a finding that Lassiter was the branch manager of the tobacco company in Tifton, and had charge, control, and custody of the premises of the tobacco company on which the alleged depredations were made, and that in what he did he was acting as agent for the tobacco company within the scope of his authority. *Southern Ry. Co.* v. *James,* 118 *Ga.* 340 (45 S. E. 303, 63 L. R. A. 257) ; *Century Bldg. Co.* v. *Lewkowitz,* 1 *Ga. App.* 636 (57 S. E. 1036) ; *Pilgrim &c. Ins. Co.* v. *McIntosh,* 24 *Ga. App.* 162 (100 S. E. 40) ; *Perry* v. *Lott,* 38 *Ga. App.* 729 (2) (145 S. E. 479) ; 3 C. J. S. 252 ; 2 C. J. 920 ; *American Investment Co.* v. *Cable Co.,* 4 *Ga. App.* 106 (60 S. E. 1037). The evidence also authorized the inference that Duffy and the other defendants were acting in concert, and that in what he did Duffy was acting for them with authority as their agent. A verdict for the defendants Lassiter and the tobacco company was not demanded as a matter of law, but under the evidence and the law applicable a verdict for the plaintiff would have been authorized. No question is raised as to whether Lassiter, the branch manager of the tobacco company, was, in his acts and doings, acting as agent for and in behalf of the tobacco company, and within the scope of his authority as such. The court erred in overruling the plaintiff's motion for new trial.

*Judgment reversed. Sutton, J., concurs in the judgment. Felton, J., dissents from the judgment as to Imperial Tobacco Company.*