John M. HART, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20154.

United States Court of Appeals
Fifth Circuit.

May 8, 1963.

Rehearing Denied June 15, 1963.

William H. Izlar, Jr., Robert L. Steed, Atlanta, Ga., John M. Hart, in pro. per., for appellant.

Charles L. Goodson, U. S. Atty., Allen L. Chancey, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, and POPE * and JONES, Circuit Judges.

TUTTLE, Chief Judge.

Appellant was indicted, tried and convicted of the crime of transporting and concealing in interstate commerce a motor vehicle which he knew to be stolen, 18 U.S.C.A. § 2312, § 2313. Prior to the trial, appellant filed a motion under Rule 41(e) of the Federal Rules of Criminal Procedure to return and suppress evidence obtained by an illegal search and seizure. This motion recited that defendant's arrest was made without a warrant and without probable cause and that pursuant to this arrest and search without a search warrant, county authorities seized bills of sale, a registration receipt and a license plate. The motion to suppress was denied the day before the trial. This appeal is taken from the conviction and the denial of this motion to return and suppress the evidence. The above evidence was turned over to Federal authorities, and was used as the basis of the conviction here appealed from. The only question on appeal is whether the search and seizure and arrest were lawful.

The order of events, which the trial court could find on the hearing on the

* Of the Ninth Circuit, sitting by designation.

motion to return and suppress the evidence, which led to the Federal authorities obtaining the evidence, is quite important. It is as follows: Sometime during the morning of October 12, 1961, defendant was accosted by a Deputy Sheriff, Satterfield, while walking along a street in Ringgold, Georgia. Defendant was "asked" by Deputy Satterfield "to come to the Sheriff's office, the Sheriff wanted to talk to him."[1] The reason given at the hearing was that the defendant was approaching a car (the car that was the stolen vehicle), the same make, model and color of a car for which the Deputy had been notified to be on the lookout. A burglary had occurred recently in Ringgold and a 1958 red Chevrolet convertible had been seen near the scene of the burglary. It was to a 1958 red Chevrolet convertible that defendant was proceeding when he was accosted by Deputy Satterfield. The defendant accompanied the Deputy to the Sheriff's office without demur or objection. Testimony is not clear as to what the Sheriff inquired of the defendant, but he probably inquired with respect to the ownership of the automobile to which defendant was proceeding, for the testimony was that defendant went back to the automobile accompanied by the Deputy in order to get the bill of sale and registration of the car.[2] Without protest the defendant gave the registration, which was in a pocket of his coat, to the Deputy and produced two bills of sale. The automobile was bearing an out-of-state license plate. It was from the license plate, the registration, the bill of sale and a serial number plated on with screws inside the car door which the Deputy observed that the latter discovered that the automobile was improperly registered under state law. It is not clear whether he opened and searched the car to see this identification plate: There was no proof that he did so. However, he did thereafter search the car and found a new Georgia license plate. The Deputy at this time took the defendant back to the Sheriff's office and, as the Deputy and the Sheriff testified, "formally" arrested the defendant for improper state registration.

After the automobile was later brought to the jail, it was searched by the then notified Federal agents who determined that the car was a stolen vehicle. The registration, bills of sale, and license plates were turned over to the agent by the Sheriff.

The searches were conducted and the arrest made without warrants.

It is appellant's first contention that he was arrested by the Deputy at the time he was first taken to the Sheriff's office, and that at that time there was no probable cause for an arrest without a warrant, and, the arrest being illegal, the search incident thereto was also illegal under Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Appellant also argues that if the arrest occurred, as claimed by the Government, only at the time of the second "visit" to the Sheriff's office, the search was also illegal in that it took the search which preceded the arrest, in order to turn up sufficient evidence to warrant the deputy's arrest without a warrant.

If we find that the defendant was arrested at the time he was first taken into the Sheriff's office, the search was clearly illegal, for at that time there was no probable cause or reasonable grounds of suspicion for arresting the appellant for any reason[3] and any search incident to an illegal arrest is also illegal. Johnson v. United States, supra. Moreover, even if there was no arrest but if Hart gave

---

1. Hart testified: "Someone told me the Sheriff wanted to see me, hollered across the street." He further stated: "I wasn't told I was under arrest."

2. The Deputy testified: "He told the Sheriff he'd go out to the car and get his bill of sale and registration."

3. At that time there was only a notice to the Deputy to be on the lookout for a 1958 red Chevrolet convertible, for someone had seen such an automobile near the scene of a recent burglary. There was no notice to be on the lookout for defendant or any particular person in connection with the burglary.

up the documents and permitted the inspection of the automobile under duress or compulsion the evidence would be equally tainted. Pekar v. United States, 5 Cir., 315 F.2d 319 (1963). We are called upon to decide whether the circumstances of this case permitted the trial court to find that the evidence sought to be excluded was obtained by the voluntary action of appellant.

The Government contends that the arrest took place only at the time the appellant was "formally" arrested by the Sheriff for improper state registration after the Deputy had determined from the registration and tags that the car was improperly registered and had brought appellant in for the second time. The Government urges that there was nothing unlawful about taking the appellant in to question him about the suspicious automobile, for this was part of "orderly police practice" to make such investigations, and that he went voluntarily and surrendered the papers voluntarily.

■■■ In the absence of an applicable Federal statute, the law of the state where an arrest without a warrant takes place determines its validity, United States v. Di Re, 332 U.S. 581, at 589, 68 S.Ct. 222, at 226, 92 L.Ed. 210 (1948). In this case, since the evidence that was seized which led to appellant's conviction was obtained by state officers with regard to a state misdemeanor,[4] and the conviction here was for interstate transportation of a stolen vehicle (which has no special section respecting searches and seizures), there is no Federal statute involved which sets the standard to be applied to determine the validity of the arrest. The Georgia law states:

> "An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for

want of an officer to issue a warrant." Ga.Code § 27-207.

It is clear that under the terms of this statute an arrest of appellant at the time he first went to the Sheriff's office would have been illegal. Even if the Georgia law recognizes the legality of an arrest without satisfying the statute, if probable cause exists for believing that a crime has been, or is being committed, which is not clear from the cases. Henderson v. State, 95 Ga.App. 830, 99 S.E. 2d 270; Fisher v. Clark, 60 Ga.App. 744, 5 S.E.2d 249, we have already stated that no probable cause existed here.

■■ The question then is whether the accosting of Hart and the invitation to him to "come see the Sheriff" was an arrest. We conclude that the trial court could find on this record that it was not, and that Hart's conduct in going back to the car and getting his papers and giving them to the Deputy, and the latter's comparison of them with the identification number were all with the consent of the appellant. The case of Conoly v. Imperial Tobacco Co., 63 Ga.App. 880, 12 S.E.2d 398 defines an arrest in Georgia:

> "An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act indicating an intention to take such person into custody, and which subjects such person to the actual control and will of the person making the arrest. It is sufficient if the arrested person understands that he is in the power of the one arresting and submits in consequence thereof. The taking of another into custody for the purpose of investigating an alleged crime constitutes an arrest. * * * Any restraint, however slight, upon another's liberty to come and go as he pleases, constitutes an arrest. There is an illegal arrest and false imprisonment of another where he is detained for any length

---

4. The Georgia Statute, § 27-207, applies both to felonies and misdemeanors. Pied-

mont Hotel Co. v. Henderson, 9 Ga.App. 672, 681, 72 S.E. 51, 58 (1911).

of time against his will." Conoly v. Imperial Tobacco Co., 63 Ga.App. 880, 885, 12 S.E.2d 398 (1940).

It is thus apparent that the state of mind of the appellant is decisive. Here, not only is there no evidence given by Hart that he was reluctant or hesitant or fearful not to accompany the Deputy to the Sheriff's office, there is no indication that he thought he was under arrest or in custody or otherwise under compulsion to talk or surrender his documents. The court could find that Hart *wanted* to give up his bills of sale and registration certificate, hoping thereby to allay any suspicion that his red convertible was the one that had been recently seen in the vicinity of a robbery. Hart did not testify that he felt coerced or was not acting willingly in all he did.

Once appellant opened up his documents to the inspection of the officer and the latter found they did not correspond with the identification number, it was clear that Hart was then actually engaged in commission of a state offense —improper registration of a motor vehicle—in the Deputy's presence. His arrest followed and the articles discovered in a search following the arrest were, of course, not tainted.

There is a narrow line between the cases where the conduct of the parties is such that it must be held that evidence produced by the accused is not voluntary, see Moore v. United States, 5 Cir., 296 F.2d 519; Pekar v. United States, supra, and those in which the trial court can find that the production of the evidence is truly voluntary. The line can be drawn between the Pekar case, just decided by this Court, and this case. In Pekar the FBI agents were first denied admission to the hotel room of the accused, who was undeniably reluctant to admit them; the accused twice declined to sign a waiver of search warrant. We held there that a search made of Pekar's room under those circumstances was unlawful. Here, on the contrary, there is no evidence indicating any unwillingness on Hart's part to go to the Sheriff's office or to furnish the title papers once he had gone. Here the trial court was warranted in holding that the actions that produced the challenged evidence were voluntary.

The Court is indebted to counsel appointed by the Court to represent the appellant here.

The judgment is

Affirmed.