69259. SCOTT HOUSING SYSTEMS, INC. v. HICKOX.
(329 SE2d 154)

BIRDSONG, Presiding Judge.

The defendant, Scott Housing Systems, Inc., appeals from a jury verdict and judgment for plaintiff, Kenneth D. Hickox. Hickox was an

employee of Scott's and repaired and serviced mobile homes. Scott furnished him with a pickup truck and tools to accomplish his job. Hickox signed a receipt for the truck and the tools and was permitted to take the truck home with him.

On June 10, 1983, the service manager fired Hickox for failure to properly perform his duties. Hickox asked to see Billy Carter, the Vice President of Scott. Hickox said he talked to Carter and was told he was "not doing his work properly." He asked Carter for his paycheck, and Carter told him "if the damn people didn't complain that I could have my money." Hickox replied "[t]hat's perfectly all right . . . I'm going to go to the house and take the vehicle. Inventory your tools and make sure everything that's there belongs to you and get my stuff out and I'll be back within an hour." Carter denies that Hickox told him he would take the truck to his house. Hickox stated that the tools provided him by Scott were not sufficient and he had to "put a big majority of my tools on the truck. . . ."

The service manager, Tommy Stalvey, said he was told by the vice president to call the police when they discovered the truck was missing. Stalvey called Detective Harry Watts of the Ware County Sheriff's Office. Watts said that Stalvey told him that after Hickox was fired he took a vehicle belonging to Scott which was loaded with tools, and "they stated that they would secure a warrant for his arrest." He wrote this latter statement down and was sure that they told him they would "secure an arrest warrant." An officer went to Hickox' house and arrested him and brought the vehicle back to the sheriff's office. An inventory of the vehicle disclosed that all Scott's tools were present and Hickox was given his paycheck. Hickox brought this action for false imprisonment and Scott appeals from a jury verdict, and judgment entered on the verdict. *Held*:

1. "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20. In an action to recover damages for illegal arrest or false imprisonment the only essential elements are the arrest or detention and the unlawfulness thereof. *Conoly v. Imperial Tobacco Co.*, 63 Ga. App. 880, 885 (12 SE2d 398). Thus, unlike an action for malicious arrest in an action based upon a warrantless arrest, the mere existence of probable cause standing alone has no real defensive bearing on the issue of liability. *Collins v. Sadlo*, 167 Ga. App. 317, 318 (306 SE2d 390). Generally one "who causes or directs the arrest of another by an officer without a warrant may be held liable for false imprisonment, in the absence of justification" (*Webb v. Prince*, 62 Ga. App. 749, 752 (9 SE2d 675)), and the burden of proving that such imprisonment lies within an exception rests upon the person making the arrest or causing the imprisonment. *Piedmont Hotel Co. v. Henderson*, 9 Ga. App. 672, 680 (72 SE 51);

accord *Sheppard v. Hale*, 58 Ga. App. 140 (2) (197 SE 922). "An arrest for a crime may be made by a law enforcement officer . . . without a warrant if the offense is committed in his presence or within his immediate knowledge, if the offender is endeavoring to escape . . . or for other cause if there is likely to be failure of justice for want of a judicial officer to issue a warrant." OCGA § 17-4-20 (a). There is nothing in the evidence to suggest any justification for the arrest and detention of Hickox without a warrant.

Georgia law draws a fine demarcation between cases in which a party directly or indirectly urges a law enforcement official to begin criminal proceedings and cases where a party merely relates facts to an official who then makes an independent decision to arrest or prosecute. In the former factual context, there is potential liability for false imprisonment. *Melton v. LaCalamito*, 158 Ga. App. 820, 822 (282 SE2d 393). Our court has generally held that "one who actively instigates or procures an arrest, without lawful process, is generally regarded as the principal for whom the officer acts, and he may be liable to respond in damages. But one who merely states to an officer what he knows of a supposed offense, even though he expresses the opinion that there is ground for the arrest, but without making a charge or requesting an arrest does not thereby make himself liable for false imprisonment . . . it is not necessary that he direct the arrest in express terms. . . . It is sufficient that the person alleged to have caused the plaintiff's arrest should by his conduct and acts have procured and directed the arrest." *Webb v. Prince*, supra, p. 752. This was a jury issue, and under the evidence recited above, the jury properly could have found that Scott's officers and employees were the cause of plaintiff's arrest without a warrant and his subsequent unlawful detention. Hence, the trial court did not err in denying defendant's motion for directed verdict, and entering judgment on the jury's verdict.

2. Detective Watts testified that Stalvey had told him that he would secure an arrest warrant before he directed the arrest of Hickox. Counsel then asked: "Suppose he would have said no would the deputies have gone out there and arrest[ed] Kenneth Hickox? A. No, sir." Defendant's counsel objected and moved to strike. His motion was denied. Defendant argues that the court erred "in allowing speculative evidence which went to the heart of the issue. . . ." We do not agree. It is true that the ordinary witness testifies from his knowledge of a fact, and it is proper for the court to refuse to permit a hypothetical question containing an assumption of fact not supported by evidence of record. Green, Ga. Law of Evid. 273, § 111. However, evidence to be admissible must be relevant (OCGA § 24-2-1), and any evidence is relevant which logically tends to prove or disprove a material fact in issue. *Kelly v. Floor Bazaar*, 153 Ga. App.

163, 165 (264 SE2d 697). This was a circumstance which was relevant to the issue of the procuring cause of the arrest of the plaintiff. Admission of evidence is a matter which rests largely within the sound discretion of the trial court and the Georgia rule favors admission of any relevant evidence no matter how slight its probative value. *Baker v. State*, 246 Ga. 317, 319 (271 SE2d 360). This enumeration is without merit.

3. Defendant attempts to justify its actions because plaintiff "admitted removing some of [Scott's] property without authorization and did not return it until some time after he had been arrested and released." This ground of error was not argued before the trial court but is contained in the brief. It relates to the fact that Hickox admitted that a door which belonged to Scott had been placed in the truck before he took the truck home to "inventory" its contents and remove his tools before returning the truck and its tools to Scott and securing his receipt. We note that Scott evidently was not aware of the missing door which was returned by Hickox after the arrest. Stalvey, in his initial call to Detective Watts, complained only about the taking of the truck and tools and the arresting officer was to look only for a truck and the tools. When Stalvey inventoried the truck and the tools at the sheriff's office following plaintiff's arrest, it did not contain the door, and Stalvey is quoted as responding to the officer's question about whether anything was missing: "No, everything's right there."

Whether the door was taken and wrongfully withheld is not germane to the basic issue of a warrantless arrest unless such arrest is within an exception under the Code. "To sustain an action for false imprisonment it is not necessary to show malice and want of probable cause, but only that the imprisonment was unlawful." *Lowe v. Turner*, 115 Ga. App. 503, 506 (154 SE2d 792). As stated earlier, in an action for false imprisonment, "the mere existence of probable cause standing alone has no real defensive bearing on the issue of liability." *Collins v. Sadlo*, supra, p. 318. We found none of the exceptions to a warrantless arrest under OCGA § 17-4-20 to exist under the facts of this case, and presupposing probable cause to believe a crime had been committed, the statute enumerates those circumstances are applicable only under "exigent circumstances." Id. p. 319. Hence, a defendant in a false imprisonment case premised upon a warrantless arrest does not carry his defensive burden by merely demonstrating the existence of probable cause but must go further and establish the arrest was made because of "exigent circumstances" enumerated in OCGA § 17-4-20. Id. p. 319. Exigent circumstances were not shown in the record. This enumeration is also meritless.

*Judgment affirmed. Banke, C. J., McMurray, P. J., Pope, Benham, and Beasley, JJ., concur. Deen, P. J., Carley and Sognier, JJ., dissent.*

CARLEY, Judge, dissenting.

Because, on the record before us, it clearly appears to me that judgment in favor of the defendant was demanded as a matter of law, I must respectfully dissent to the majority's finding no error in the trial court's failure to grant a directed verdict in favor of the defendant.

The majority concludes that the jury "properly could have found that Scott's officers and employees *were the cause of plaintiff's arrest without a warrant* and his subsequent unlawful detention." (Emphasis supplied.) (Majority opinion, page 25.) One of the cases upon which the majority places great reliance is *Webb v. Prince*, 62 Ga. App. 749 (9 SE2d 675) (1940). Thus, in the beginning, the majority sets the stage for its holding by quoting partially from *Webb* and stating: "Generally one 'who *causes or directs the arrest* of another by an officer *without a warrant* may be held liable for false imprisonment, in the absence of justification.' (*Webb v. Prince* [supra] . . .)" (Majority opinion, page 24.) (Emphasis supplied.) I agree with the majority that this *Webb* analysis must be made in connection with the record in this case. Evidently the majority and I differ as to the effect of the application of the *Webb* standard. It is my firm belief that there simply was no evidence from which a jury could have found that the conduct and acts of the plaintiff *caused or directed the arrest* of the plaintiff *without a warrant.*

The evidence primarily relied upon by the plaintiff was the testimony of Detective Harry Watts. On direct examination, Detective Watts simply stated that Mr. Stalvey, one of defendant's agents, said that "they would secure a warrant for [plaintiff's arrest]." On cross-examination, Watts was asked:

"Q . . . isn't it true that you asked him will y'all secure an arrest warrant or will you take out an arrest warrant?

A Yes, sir, I did.

Q And, he certainly didn't direct the Sheriff's Department about how to go about their business of searching or picking up Mr. Hickox, did he?

A No, sir.

Q He didn't tell y'all to go arrest him and do this and that and the other to him, did he?

A No, sir.

Q And, he didn't tell you what to do, he just reported the facts to you, didn't he?

A That's correct."

Furthermore, Sergeant Randy Royal, the officer who actually effected the arrest of appellee, testified on direct examination that after he located the truck described in the radio broadcast, he "then called the Detectives and *they* said *they* were in the process of securing war-

rants." (Emphasis supplied.) On cross-examination, Sergeant Royal testified as follows:

"Q Did anyone give you any directions specifically concerning how to handle the arrest of Kenneth Hickox?

A I was under supervision of Lt. Herrin and Detective Watts.

Q Did anyone from Scott Housing give you any directions?

A No, sir, they didn't.

Q Before you made the arrest did you talk to anyone?

A I never talked with nobody at — from Scott Housing. All my information was over the radio."

It is clear that merely because a defendant contacts a police officer he is not liable for false imprisonment "where he did not direct or request the making of the arrest . . ." *Hammond v. D. C. Black, Inc.,* 53 Ga. App. 609 (186 SE 761) (1936). "It is essential in order to charge one who did not actually make the arrest with responsibility for the act of the arresting party that it be alleged and shown that the party making the arrest was acting under the express authority of the one sought to be charged, ([cit.]), or that a subsequent ratification of his acts be alleged. [Cit.]" *J. C. Penney Co. v. Green,* 108 Ga. App. 155, 158 (132 SE2d 83) (1963).

Applying these principles — with which the majority evidently agrees — to the testimony in this case, construed most strongly in favor of plaintiff-appellee, it becomes apparent that there simply was not enough evidence to submit the issue to the jury. The majority seems to assign paramount importance to the fact that defendant's agent told the police that he would secure an arrest warrant and that the deputies would not have arrested Hickox had the agent not said that he was going to secure an arrest warrant. Ironically, I believe that the very fact that, in response to questions from the Detective, the defendant's agent stated that the defendant *would obtain a warrant* demonstrates that there is no way that it could be found that the defendant caused or directed *the arrest without a warrant.*

If the majority's ruling in this case is correct, any time anyone reports a crime and relates only actual facts concerning the alleged perpetrator, he will be subject to liability for the later warrantless arrest if he responds affirmatively to a police officer's inquiry as to whether he will take a warrant for the arrest of the perpetrator if apprehended. Thus, I believe that the fatal flaw in the plaintiff's own proof is that it shows conclusively that the only possible intention of the defendant or its agents was to procure a warrant *before an arrest.* The fact that the police officers arrested the defendant based upon the defendant's agent's assurance that a warrant would be obtained can in no way be construed as supporting a conclusion that the defendant caused or directed an arrest *without a warrant.* The plaintiff failed to carry his burden of proof, the trial court erred in failing to

direct a verdict, and I respectfully dissent.

I am authorized to state that Presiding Judge Deen and Judge Sognier join in this dissent.

DEEN, Presiding Judge, dissenting on rehearing.

The majority opinion relies heavily on the testimony of Billy Carter. Judge Carley's dissent, in my opinion, correctly assesses the case: even though statements were made by the defendant's agent that a warrant would be secured, this still was not the cause of the plaintiff's eventual warrantless arrest.

On rehearing, appellant's attorney analyzes the situation:
"Ken Hickox was 'cuffed' and held;
They took him to the Ware County Jail;
Scott said 'all we did is make a call';
Don't blame us 'cause the law committed a foul;
Scott reported a missing truck saying 'We protest';
The law on its own made the warrantless arrest."

The appellant's attorney has not taken poetic license with the facts; the evidence simply demanded a verdict for the appellant. Accordingly, I fully concur with Judge Carley's dissent.

DECIDED FEBRUARY 5, 1985 —
REHEARING DENIED MARCH 20, 1985 —

*Hugh B. McNatt, Jiles M. Barfield, Neal L. Conner, Jr.*, for appellant.
*John R. Thigpen, Sr.*, for appellee.